Leroy Rudy JEFFERS, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 1183S426.

Supreme Court of Indiana.

Nov. 21, 1985.

Phyllis J. Senegal, Gary, for appellant.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

The appellant, Leroy Jeffers, was convicted by a jury of two counts of Dealing in Cocaine, Ind.Code § 35–48–4–1(1) (Burns 1985 Repl.), both class B felonies, and one count of Possession of Cocaine with Intent to Deliver, Ind.Code § 35–48–4–1(2) (Burns 1985 Repl.), a class B felony, and was sentenced to two concurrent terms of twenty years of imprisonment and a third term of twenty years to be served consecutively to the others. In this direct appeal, the following issues are raised:

1. Whether the evidence was sufficient to sustain the convictions;

2. Whether the State proved an adequate chain of custody of the cocaine;

3. Whether the court erred in denying appellant's *pro se* motion for a change of venue from the judge;

4. Whether appellant was denied effective assistance of counsel; and,

5. Whether the sentence imposed was excessive.[1]

The facts which tend to support the judgment of conviction are as follows. The Gary police department received an anony-

---

**1.** Appellant has filed, *pro se,* a brief supplementing that filed by appellate counsel. We will not review many of the issues raised in his brief for the following reasons.

Appellant does not have standing to complain of a deprivation o his son's constitutional rights. His challenge to the constitutionality of the search and seizure is waived because no objections were made at trial to the introduction of the evidence of the search and its fruits, nor was the issue raised in the motion to correct error. Likewise, his assertions that error occurred during voir dire and that jury members were biased are waived as is his claim that the court erred when it instructed the jury that it had mistaken-

ly returned two verdicts on Count I. Neither appellant's allegation that the indictment was faulty nor his claim of entrapment was raised until the filing of his brief. Therefore, those issues are waived as is his claim that the use of his son's statement against him denied him his right to confront his accusers because it bore the signature of the son's mother who was not a witness. Most of the errors in the presentence report to which appellant points were corrected at sentencing and the other alleged deficiencies were not brought to the court's attention in a timely manner and were not relied upon by the court at sentencing.

mous tip that narcotics were being sold from the rear apartment of a multi-unit dwelling. The police set up surveillance for three days. After observing what they believed to be narcotics traffic at the address, an undercover purchase was planned.

Officer Richardson testified that she knocked on the door of the rear apartment, and it was answered by appellant's fourteen-year-old son, Becelone. She told him she wanted "two dimes." He told her to move to a window where she gave him police department money. She saw him go to a refrigerator, then back to the window where he handed her two small white packets.

The officer returned to the police station, opened the packets, and saw they contained a white powdery substance. She marked the packets with her initials, the date, and the time, placed them in an envelope, sealed it, and dropped it in the property vault.

The next day, she took the envelope from the vault to the toxicology laboratory where the substance was analyzed. Later, she took the envelope back to the property vault. On the day of trial she took the envelope from the vault. She testified it was in the same condition then as it was when she had last put it in the vault.

The toxicologist for the State testified that he received the sealed envelope in his laboratory where it was assigned a laboratory number and, in the presence of the officer, placed in the laboratory vault. He testified that the normal procedure was followed, which is for the chemist to retrieve the envelope from the vault, not its sealed condition, then open it and perform the analysis. After analysis, the remaining evidence was returned to the vault. When the officer returned to the laboratory, she was present as the evidence clerk removed the envelope from the vault. The officer was then presented with the toxicologist's letter of analysis. The toxicologist testified that the white powder brought to him by Officer Richardson was cocaine.

Precisely the same testimony was presented as to a second purchase of cocaine by Officer Richardson at the same residence. Becelone answered the door, took her order and money for "two dimes," and handed her two packets through the window. Officer Richardson and the toxicologist testified the same procedures were used for sealing and securing the evidence, and the toxicologist found it to be cocaine.

A few days later, the police procured a warrant to search the rear apartment. After they announced themselves at the door, they heard shuffling inside and decided to force their entry. Inside they discovered appellant, his wife, Becelone, and the other six children huddled in the bathroom with a shotgun. A vial of cocaine was taken from the refrigerator. The remains of some marijuana cigarettes and a syringe with cocaine residue were taken from atop the kitchen table.

Later, Becelone made a statement to the police. He told them that both his parents knew he was selling the drugs from the house and that he did it because his father, the appellant, had told him to. He had not told his father he did not want to sell the drugs because he was afraid his father would hit him. Becelone told the police his father taught him that the packets cost ten dollars, and that he should first take the money, then go to the refrigerator and get the drugs.

Becelone told the police that he was never left alone to sell the drugs, which he had been doing for almost one year. His father sometimes was in the apartment during the sales, and sometimes his mother was present. Becelone did not know how the drugs came into the apartment, but he turned the money from the transactions over to the appellant.

Becelone's statement was introduced at trial after it was substantially contradicted by his direct testimony. On direct examination, Becelone testified he did not know if he had sold drugs on the two dates of the police undercover purchases, but he did admit that at times during that month he had sold drugs at the direction of his fa-

ther. Then he stated, "Well, really, my father didn't tell me to sell them. My mother told me." He said his statement he gave the police was not truthful and that his mother had told him to implicate his father. Then he testified his father was sometimes present when he sold the drugs and that he gave the money to his father because the drugs belonged to his father.

## I.

Appellant challenges the sufficiency of the evidence. He claims he was not shown to have had sufficient control and interest in the premises to have been convicted for aiding and abetting his son's dealing in cocaine or to have been convicted for possession with intent to deal the cocaine found in the refrigerator. We will neither reweigh the evidence nor judge the credibility of the witnesses. *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. We will look only to the evidence most favorable to the State to determine whether the crimes were proved beyond a reasonable doubt. *Id.*

Apparently, appellant had set up official residence in the apartment above the rear apartment. His wife, Becelone, and the other children resided in the rear apartment where the drug traffic occurred. An employee of the utility which supplied natural gas service to the apartment testified that approximately three months before appellant's arrest, he began service for the upstairs apartment and his wife began service for the rear apartment.

■ Whether or not appellant had set up household separate from the apartment where the criminal activity took place, the evidence nonetheless sufficed to prove his guilt. The jury was entitled to believe Becelone's original statement that the criminal enterprise was controlled by appellant. He stated his father directed him in the sales, controlled the profits, and sometimes was present. Even at trial Becelone testified that appellant told him to sell the drugs and that the drugs belonged to appellant. The State proved beyond a reason-

able doubt that appellant knowingly and intentionally aided and induced Becelone in the delivery of cocaine. Ind.Code §§ 35–41–2–4 and 35–48–4–1(1) (Burns 1985 Repl.).

■ Appellant further argues that his alleged lack of control and interest in the premises renders insufficient the evidence against him on the charge of Possession with Intent to Deliver the cocaine taken in the search. One's possession of a substance may be constructive only and need not be actual and exclusive to create criminal liability. *Cooper v. State* (1976), 171 Ind.App. 350, 357 N.E.2d 260; *Smith v. State* (1975), 165 Ind.App. 60, 330 N.E.2d 771. Constructive possession may be proved by circumstantial evidence from which the care, management and control over the item in question may be inferred. *Phillips v. State* (1974), 160 Ind.App. 647, 313 N.E.2d 101.

Here, the cocaine seized in the search was stored and packaged similarly to the cocaine sold to the police, which was shown through Becelone's statement to have been owned and controlled by appellant. Appellant's constructive possession of the seized cocaine can be inferred from the evidence that he controlled the cocaine traffic from the apartment. Despite appellant's claim that he did not live in the rear apartment and, therefore, could not have possessed the drugs found there, the evidence showed he was often present and, in fact, was there standing guard over his family when the police arrived.

■ Appellant's intent to deliver the cocaine seized also can be inferred from the evidence as a whole. *Romack v. State* (1983), Ind.App. 446 N.E.2d 1346. The evidence that appellant was in the business of selling drugs and that the cocaine was stored and packaged similarly to the previously delivered drugs supports the inference appellant intended to deliver the seized cocaine. *Id.* The State proved beyond a reasonable doubt that appellant aided and induced Becelone in the two deliveries of cocaine and that he possessed the

cocaine with an intent to deliver the cocaine. Ind.Code § 35–48–4–1(2) (Burns 1985 Repl.).

## II.

■ Appellant claims the court erred in admitting into evidence the cocaine purchased from Becelone by Officer Richardson. He argues the State established a chain of custody insufficient to have prevented tampering. He complains that no one familiar with the procedures and security of the property vault testified at trial. He states, "It was as if the cocaine samples entered a void from which they were subsequently retrieved by the police officers and transported to the toxicology laboratory."

This "void" into which the evidence was placed was the police property vault where it was kept under lock and key until Officer Richardson transported it to the laboratory.

We disagree with appellant that a gap in the chain of custody was shown by the State's failure to produce testimony from a "custodian of the vault" describing the vault or any of the security devices. Officer Richardson sealed the evidence and placed it directly into the locked vault. On cross-examination she testified that while it was locked in the vault she supposed the officers in the property division would have access to it. Nonetheless, the State is not required to exclude every possibility of tampering. *Gorman v. State* (1984), Ind., 463 N.E.2d 254. The evidence showed the packet was in the continuous custody of the police, and we will not engage in speculation of untoward activity. *See Powers v. State* (1982), Ind., 440 N.E.2d 1096. The evidence provides reasonable assurance that the cocaine was undisturbed, *Gorman, supra,* and appellant has not shown error in the admission of the cocaine.

## III.

■ Appellant claims the court erred in denying his *pro se* motion for change of venue which alleged the court's bias and prejudice. He points to the following exchange which occurred after appellant was granted a mistrial and then moved for a speedy trial:

BY THE COURT: Now, one more thing, Mr. Jeffers. About this business about your refusing to come down to the courtroom in your own clothes, that's silly. You do not present a good appearance to any jury in your jail clothes.

BY THE DEFENDANT: Am I allowed to speak, Your Honor?

BY THE COURT: Yeah.

BY THE DEFENDANT: Just like you have your own person, you got a wife; she do things for you; you can depend on her; the same situation occurs with me. I have a wife; I depend on her to do things for me. My wife had a nervous breakdown. They arrested her and put her in jail. She hasn't done anything. She took all my kids and got them in foster homes. I'm here, locked up. I don't have her around. Other than that, she would have my clothes out and different things, so that's why I'm in the situation I'm in.

BY THE COURT: I was told by the jailer they had clothes for you.

BY THE DEFENDANT: I came here in the winter time, and the clothes that I have are not suitable for this type of situation.

BY THE COURT: Well, you know, even if it's—even if they are wool, it's better than the jail clothes.

BY THE DEFENDANT: Yea, but, Your Honor, the clothes are soiled. I was—they took me to the Gary City Jail, and I wasn't allowed to change clothes.

BY THE COURT: The people you turned and talked to in the audience, are they related to you in some way?

BY THE DEFENDANT: That's my son there, and that's my cousin.

BY THE COURT: Would they be able to get clothing for you?

BY THE DEFENDANT: I'm interested in getting this trial over. I'm separated from my family. I have a problem with the man. I'm locked up.

BY THE COURT: I'm sure you read *Estelle vs. Williams* just like I have.

BY THE DEFENDANT: I'm not concerned about no clothes.

BY THE COURT: You cannot be compelled to go to trial in your jail clothing.

BY THE DEFENDANT: I went for a speedy trial.

BY THE COURT: I understand what's going on here. This is silly. *Just because of a legal case that you think is going to get this case reversed for some reason, you're appearing in jail clothing in the courtroom.* I'm telling you, that's silly. You do not present a good— the reason for the rule is that it is not in your best interests to appear in jail clothing. That's the reason for the rule. (Our emphasis.)

Here, appellant has shown at the most a strained relationship with the judge which arose from appellant's refusal to don civilian clothes. A strained relationship between a judge and a criminal defendant does not in itself constitute grounds for a change of judge. *Yager v. State* (1982), Ind., 437 N.E.2d 454, *reh. denied* Sept. 13, 1982. Appellant has not shown prejudice which could have deprived him of a fair trial.

■ Appellant also claims the court showed its prejudice when, during a pretrial conference, it asked the prosecutor, "Do you expect [Becelone] to testify favorably for the State?" The occasion of this pretrial conference was the appellant's original counsel's motion to withdraw because he had represented Becelone in a juvenile matter. The trial judge asked the question in an effort to establish for the record that defense counsel would have to cross-examine Becelone and would, therefore, be confronted with a conflict of interests justifying his withdrawal. Appellant has not shown prejudice from the court's inquiry.

## IV.

Appellant claims he was denied effective assistance of counsel. Our standard of review is to determine whether appellant received reasonably effective assistance. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Price v. State* (1985), Ind., 482 N.E.2d 719. Our scrutiny of counsel's performance is highly deferential, and appellant must overcome a presumption that his actions constituted sound strategy. Appellant must show, first, that counsel's performance was deficient and, second, that the defense was prejudiced by the deficient performance. *Id.*

■ Appellant argues counsel should have challenged the charging information on the grounds that two drug sales to the same individual do not constitute two separate offenses. The two counts covered drug sales on two occasions and were clearly separate offenses.

■ Appellant reports that one juror was related to a police officer involved in the case and that counsel failed to exercise a peremptory challenge against the juror. Appellant has not claimed that counsel was aware of the alleged relationship of which we have no proof—only appellant's bald assertion. Furthermore, we have not been presented with a record of the voir dire proceedings from which we could appraise counsel's performance.

■ Appellant cites counsel's failure to suppress the fruits of the search in support of his claim that counsel was ineffective. He makes no showing that such an effort might have succeeded. The record does not include the supporting affidavit or warrant from which we could glean obvious grounds for suppression. What we do know from the record is that the officers' surveillance of the premises and their undercover transactions there surely constituted probable cause to search and that they entered the apartment with a search warrant.

■ Appellant further bases his argument on counsel's failure to move for independent evaluation of the cocaine. In light of Becelone's statement to the police that he had been selling cocaine from the apartment for one year and the toxicologist's testimony that the substance sold was co-

caine, we do not believe independent analysis would have aided the defense. Thus, it was not prejudiced by the decision not to seek another analysis.

■ As to Becelone's statement against appellant which was admitted at trial, appellant claims counsel's performance was deficient. First, he complains that counsel did not cross-examine Becelone in an effort to explain that when Becelone stated he "gave the money to Daddy" he may have been referring to money he had previously borrowed from appellant and not the profits from the drug sales. however, Becelone's answer was to the question, "What would you do with the money after you sold the drugs?" Cross-examination on the theme appellant suggests would not have been beneficial.

■ Appellant's second complaint about counsel's treatment of Becelone's statement pertains to appellant's wife's signature which she added to the statement as Becelone's parent because of his juvenile status. Appellant claims it was not in fact her signature and he would have had counsel explore that possibility. Becelone's mother was not a witness, but Becelone and the officers who took the statement testified as to her presence when the statement was taken. Counsel had no reason to question the authenticity of the signature. Appellant argues that counsel should have "moved" for appellant's wife to appear as a witness because his claim is that she coerced Becelone into making the allegedly false statement against appellant. The record shows a warrant was issued against Becelone's mother to appear as a material witness and she was not located. The motion appellant suggests would not have caused her appearance.

■ Appellant insisted on testifying at trial against counsel's advice. His attorney proceeded to examine him in an effort to emphasize that appellant did not live in the rear apartment and was not present during Officer Richardson's drug purchases. Appellant took the opportunity to accuse the police of cocaine abuse. The court requested that he respond appropriately to the questions posed by answering "Yes" or "No." Now appellant argues his attorney was incompetent because, he claims, *his attorney* asked the court to direct appellant how to answer. Even if such a request by counsel were inappropriate, we cannot find it in the record. When appellant took the stand and was asked by his attorney to state his name, he answered, "My name is Leroy Jeffers, a name that I don't approve of, but it was given to me." His attorney said, "Please answer by questions." We believe counsel's advice was a prudent attempt, albeit unavailing, to control his client's responses in an effort to present a defense.

■ Appellant claims his attorney should have objected to sentencing because of errors in the presentence report. Counsel put appellant on the stand and appellant was given full opportunity to correct the alleged errors. The court noted the corrections and asked appellant if there were others to which appellant replied there were many more but he did not want to discuss it. The information in the presentence report which appellant claims was incorrect was not used by the court for enhancement of sentences or for the imposition of consecutive sentences. His history of criminal activity was lengthy with or without the challenged information. Thus, even if counsel could have pursued the matter further, appellant was not harmed. He regrets that his attorney did not subpoena members of the Gary police department for an explanation of entries on the presentence report of "unable to find disposition" of certain investigations of appellant. Again, these entries were insignificant when compared to the entire report, and testimony from the police about previous criminal investigations against appellant could only have emphasized his criminal history.

Appellant argues his attorney should have tendered an instruction "of defendant's prior conviction for impeaching," citing a case we cannot find. We note, however, that an instruction was given to the

jury that the evidence of his prior conviction was admitted only for impeachment.

██ Appellant's claim that his attorney failed to investigate and prepare for the trial and that he lacked skill and failed to make objections is not supported by the record. Defense counsel performed reasonably and with zeal, interjecting appropriate objections and effectively cross-examining state's witnesses. When his client insisted upon testifying, counsel competently engaged in a lengthy and difficult examination, pursuing the theory of defense that appellant was not present during the drug transactions, did not live in the rear apartment, and was falsely implicated by his son. Appellant's counsel was not ineffective.

██ Appellant also argues that his appellate counsel has been ineffective for her alleged failure to correspond with him and to raise on appeal the many allegations of error he has fashioned. If appellant has had infrequent correspondence with appellate counsel, we do not know how he has been harmed, as she had made all the necessary filings in a timely manner and has filed a brief competently arguing that the evidence was insufficient and that the chain of custody shown for the cocaine was not adequate. Her failure to raise the myriad issues brought to her and our attention by appellant is understandable in light of the fact that they were either completely meritless or waived long ago.

## V.

██ Appellant argues the sentence imposed was manifestly unreasonable and constitutes cruel and unusual punishment. On each of the three counts he was sentenced to twenty years, the presumptive sentence enhanced by ten years for aggravating factors. Ind.Code § 35-50-2-5 (Burns 1985 Repl.). In support of the sentence enhancements, the court stated as aggravating factors that appellant had violated the conditions of his federal parole, that he had a history of criminal activity, and that he was in need of correctional and rehabilitative treatment. These are three of the aggravating factors listed in Ind. Code § 35-38-1-7 (Burns 1985 Repl.). Appellant does not argue that the court's findings are false, nor does he challenge the statutory authority for the court's imposition of the consecutive sentence. The court stated its reason as being that appellant enlisted his fourteen-year-old son to handle the drugs to avoid his own responsibility, that he quoted the Bible to justify dealing drugs, and that both acts revealed that appellant lacked normal values and presented a serious hazard to society.

The court sentenced appellant within its statutory authority and in full consideration of the record and presentence report. We cannot agree with appellant that the sentence was unreasonable. *Dodson v. State* (1978), 269 Ind. 380, 381 N.E.2d 90.

The judgment of the trial court is in all things affirmed.

GIVAN, C.J., and DEBRULER, PRENTICE and PIVARNIK, JJ., concur.