**FORT WAYNE NATIONAL CORPORATION,**
Petitioner,

v.

**INDIANA DEPARTMENT OF STATE REVENUE, and Kenneth L. Miller in his capacity as Commissioner of the Indiana Department of State Revenue, Respondents.**

**No. 49T10–9204–TA–00017.**

Tax Court of Indiana.

Sept. 8, 1993.

---

William F. Landers, Jr., Thomas M. Shoaff, Baker & Daniels, Indianapolis, for petitioner.

Pamela Carter, Atty. Gen. of Indiana, David A. Arthur, Jane E. Griffin, Deputy Attys. Gen., Indianapolis, for respondents.

FISHER, Judge.

The Petitioner, Fort Wayne National Corporation (Fort Wayne National), appeals the final determination of the Respondent, the Indiana Department of State Revenue (the Department), denying Fort Wayne National's claim for refund of a portion of the Financial Institutions Tax (the FIT)[1] it paid for calendar year 1990. The matter is before the court on the parties' cross motions for summary judgment.

## ISSUES

The parties' motions raise the following issues:

I. Whether the Department properly included the income on certain municipal bonds in calculating Fort Wayne National's FIT liability.

II. Whether the FIT violates the nondiscriminatory requirement of 31 U.S.C. § 3124(a).

III. Whether Fort Wayne National has a claim under 42 U.S.C. § 1983.

---

1. IND.CODE 6–5.5–1–1 through 6–5.5–9–5.

## FACTS

The parties have stipulated the material facts. Fort Wayne National is a bank holding company with various wholly owned subsidiaries. Fort Wayne National and its wholly owned subsidiaries filed a consolidated return for the 1990 taxable calendar year. For 1990, Fort Wayne National paid $1,973,936 in FIT, $1,841,736 out of pocket and $132,200 in credits. The credits are not at issue.

Fort Wayne National paid $685,533 of the total under protest and filed a claim for refund seeking that amount plus interest on October 16, 1991. The disputed amount represents the FIT attributable to municipal and federal bond income on bonds issued before May 1989. The Department neither granted nor denied the claim within 180 days of its filing and Fort Wayne National filed this appeal on April 20, 1992.

## DISCUSSION AND DECISION

At the outset, the court reiterates the familiar standard of review for summary judgment motions. When reviewing a motion for summary judgment, the court is to grant the motion only if no genuine issue of material fact exists and a party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Harlan Sprague Dawley, Inc. v. Indiana Dep't of State Revenue* (1992), Ind.Tax, 605 N.E.2d 1222, 1224 (citing *C & C Oil Co. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 570 N.E.2d 1376, 1378). "[E]ach party to a summary judgment motion must designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion." *Rosi v. Business Furniture Corp.* (1993), Ind., 615 N.E.2d 431, 434 (quoting T.R. 56(C)). If, after reviewing the designated evidentiary materials, the court determines no genuine issue of material fact exists, either the movant or the non-movant may be granted summary judgment. *C & C Oil Co.*, 570 N.E.2d at

1378 (citing *Indianapolis Pub. Transp. Corp. v. Indiana Dep't of State Revenue* (1987), Ind.Tax, 512 N.E.2d 906, 907, *aff'd* (1990), Ind., 550 N.E.2d 1277).

I.

*MUNICIPAL BOND INCOME*

Fort Wayne National is a financial institution that carried on business within Indiana during 1990. Fort Wayne National was, therefore, subject to the FIT. *See* IND.CODE 6–5.5–1–17; 6–5.5–2–1. The FIT, which took effect on January 1, 1990, is an 8.5% levy on the remainder of a taxpayer's apportioned income or adjusted gross income minus the taxpayer's deductible Indiana net operating losses and net capital losses for the privilege of exercising its franchise or transacting business within Indiana. IC 6–5.5–2–1(a).

 Fort Wayne National had municipal bond income in 1990 and now claims that income is exempt from the FIT by virtue of IND.CODE 6–8–5–1, the General Exemption Statute (the GES). At the time Fort Wayne National's municipal bonds were issued, the GES provided in pertinent part:

> *All* bonds issued after March 11, 1959, or notes, warrants, or other evidences or indebtedness issued in the state of Indiana by or in the name of any county, township, city, incorporated town, school corporation, state educational institution or state supported institution of higher learning, or any other political, municipal, public or quasi-public corporation or body, or in the name of any special assessment or taxing district or in the name of any authorized body of any such corporation or district, the interest thereon, the proceeds received by a holder from the sale of such obligations to the extent of the holder's cost of acquisition, or proceeds received upon redemption prior to maturity, or proceeds received at maturity, and *the receipt of such interest and proceeds, shall be exempt from taxation in the state of Indiana for all purposes except the state inheritance tax.*

IC 6–8–5–1(a) (emphasis added). When construing a statute, the court is to give the statutory words and phrases their plain, ordinary, and usual meaning unless the legislature's intent reveals a contrary purpose. *State v. Hartman* (1992), Ind., 602 N.E.2d 1011, 1013; *Johnson County Farm Bureau Coop. Ass'n v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 568 N.E.2d 578, 580–581, *aff'd* (1992), Ind., 585 N.E.2d 1336. The court strictly construes statutes creating exemptions from tax against the taxpayer, but must nonetheless always bear the legislature's intent in mind to avoid reading an exemption so narrowly that its application is defeated in cases rightly falling within its ambit. *Harlan Sprague*, 605 N.E.2d at 1225 (citing *General Motors Corp. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 578 N.E.2d 399, 404, *aff'd* (1992), Ind., 599 N.E.2d 588).

 The GES provides that municipal bond income "shall be exempt ... for *all* purposes except the state inheritance tax." IC 6–8–5–1 (emphasis added). When used as an adjective, as it is in this portion of the GES, "all" means "every member or individual component of: each one of—used distributively with a plural noun or pronoun to mean that a statement is true of every individual considered ... [as in] (a film suitable for all ages)." *Webster's Third New International Dictionary* 54 (1981). "Shall" within a statute has a mandatory rather than a directory meaning unless it appears clear from the context or purpose of the statute that the legislature intended a different meaning. *United Rural Elec. Membership Corp. v. Indiana & Michigan Elec. Co.* (1990), Ind., 549 N.E.2d 1019, 1022 (citing *State ex rel. City of Indianapolis v. Brennan* (1952), 231 Ind. 492, 109 N.E.2d 409). No language could be plainer than these words in the GES, and notwithstanding that courts must construe exemptions narrowly, unambiguous language must be given its plain meaning. *See, e.g., Matter of Grissom* (1992), Ind., 587 N.E.2d 114, 116.

The main clause of the GES is sweeping in its scope. The legislature desired to enhance the marketability of Indiana mu-

nicipal bonds and to that end exempted those bonds from all Indiana taxes but one. Indeed, the very existence of the exception for the state inheritance tax confirms the otherwise broad scope of the GES. Statutory exceptions and provisos serve to qualify or limit the plain meaning of a statute's main clause by restraining it to except something that would otherwise be within its scope. *See Kirkpatrick v. King* (1950), 228 Ind. 236, 246, 91 N.E.2d 785, 789 (quoting *McDougal v. State* (1915), 183 Ind. 168, 170, 108 N.E. 524, 525); *Ernst & Ernst v. Underwriters Nat'l Assurance Co.* (1978), 178 Ind.App. 77, 83, 381 N.E.2d 897, 900 (citing *State v. Shrode* (1949), 119 Ind.App. 57, 83 N.E.2d 900, 902).

The GES's command is clear and unambiguous. The municipal bonds at issue predate the FIT and were therefore exempt from all forms of taxation other than the inheritance tax by the express terms of the GES. *See* IC 6-8-5-1. In 1990, however, the GES was amended to include the FIT as well as the inheritance tax as exceptions to the exemption it creates. The issue therefore becomes the effect of the FIT and the 1990 amendment to the GES on the otherwise exempt status of Fort Wayne National's municipal bonds.

### A. THE FIT

■ When the GES was enacted, the FIT did not exist, but that alone does not resolve whether the FIT falls within the ambit of the GES. The FIT is a "measured by" tax, that is, a tax measured by income. *See* IC 6-5.5-2-1.

Prior to the 1990 amendment, the GES excepted from its terms only the state inheritance tax. The exception of only the inheritance tax, like any statutory exception, must be strictly construed. *Natural Resources Comm'n v. Porter County Drainage Bd.* (1991), Ind., 576 N.E.2d 587, 589 (citing *Common Council of Peru v. Peru Daily Tribune* (1982), Ind.App., 440 N.E.2d 726. But it also implies the inclusion of all other taxes, including "measured by" taxes, which existed when the GES was promulgated. *See, e.g., Gross Income Tax Division v. Bartlett* (1950), 228 Ind.

505, 93 N.E.2d 174, *appeal dismissed* (1951), 340 U.S. 924, 71 S.Ct. 499, 95 L.Ed. 667. *See also Caylor–Nickel Clinic, P.C. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 569 N.E.2d 765, 772–73, *aff'd* (1992), Ind., 587 N.E.2d 1311 (discussing the rule of construction of express inclusion and implied exclusion: the enumeration of certain items in a statute or regulation implies the exclusion of items not enumerated). The GES therefore included measured by taxes in its scope.

More importantly, though, the subject matter of the FIT was included within the original GES. The FIT is a replacement tax for the gross income tax, adjusted gross income tax, bank tax, savings and loan association tax, and the production credit association tax for financial institutions within the meaning of IC 6-5.5-1-17. *See* IND.CODE 6-5.5-9-4. Like all taxes other than the inheritance tax, these taxes were within the scope of the GES. Taxpayers subject to the FIT are no longer subject to the predecessor taxes. *Id.* The FIT, then, is simply a continuation, albeit in a new form, of taxes long in existence.

The status of the FIT is in stark contrast to that of the state income tax in *People ex rel. Clyde v. Gilchrist* (1923), 262 U.S. 94, 43 S.Ct. 501, 67 L.Ed. 883. In that case, New York law exempted debts and obligations secured by real property mortgages from all taxes except a recording tax. Many years after the enacting the exemption, the state passed an income tax. The taxpayer claimed the income from the otherwise exempt obligations was exempt from the income tax as well. The New York courts and the United States Supreme Court all rejected the taxpayer's position, because, as the Justice Holmes succinctly stated, "no one thought of an income tax" when the exemption was passed. *Id.* at 98, 43 S.Ct. at 503, 67 L.Ed. at 893. *See also People ex. rel. Central Union Trust Co. v. Wendell* (1921), 197 A.D. 131, 188 N.Y.S. 344. In the present case, on the other hand, not only was the subject matter of the FIT entirely within the contemplation of the legislature at the enactment of the GES, it was within the actual ambit of the

GES, as well. The FIT is a replacement tax, and it would have been included in the GES but for the GES's amendment to except it.

## B. THE GES AMENDMENT

In 1990, both the FIT and the GES amendment became effective.[2] As noted, the exception to the GES must be strictly construed. *Porter County Drainage Bd.*, 576 N.E.2d at 589. Nonetheless, the court must give the exception, like any other statutory language, its plain meaning. *See Johnson County Farm Bureau*, 568 N.E.2d at 580–581. Accordingly, all Indiana municipal bonds issued since the amendment are subject to the FIT as well as the inheritance tax. The GES amendment, however, cannot alter the status of bonds issued before the amendment.

■ One of the primary rules of statutory construction requires courts to give statutes prospective effect only, unless the legislature unequivocally and unambiguously intended retrospective effect as well. *State ex rel. Bd. of Dental Examiners v. Judd* (1990), Ind.App., 554 N.E.2d 829, 832 (citing *Turner v. Town of Speedway* (1988), Ind.App., 528 N.E.2d 858, 863). Amendments, too, are normally to operate prospectively, *Thomas v. Hemmelgarn* (1991), Ind.App., 579 N.E.2d 1333, 1338, *trans. denied*, and the courts of this state strongly disfavor retroactive application of even remedial amendments if existing rights would be infringed. *Brane v. Roth* (1992), Ind.App., 590 N.E.2d 587, 590, *trans. denied* (citing *Judd*, 554 N.E.2d at 832). Additionally, amendments that change statutory language, as these did, indicate a legislative intention to change the law. *Metropolitan School District v. Mason* (1983), Ind.App., 451 N.E.2d 349, 352 (citing

*Indiana Alcoholic Beverage Comm'n v. Osco Drug, Inc.* (1982), Ind.App., 431 N.E.2d 823).

The Department claims its reading of the GES amendments raises no retroactivity questions because the legislature passed the FIT in 1989 to take effect beginning on January 1, 1990. True enough, the Department's interpretation does not call for the reopening of a taxpayer's records for earlier tax years. What it does call for, however, is the imposition of a "measured by" franchise tax that includes within its measurement the income from outstanding municipal bonds, bonds which were issued free of all state taxes save the inheritance tax. To read the GES amendments this way would, in essence, give the amendments retroactive effect, and the court declines the Department's invitation to read the amendments retroactively without clear legislative direction.

The FIT is a replacement tax, covering the same subject matter as previous taxes within the original GES, and existing in a long established format, *i.e.*, a "measured by" tax, which also lay within the original GES. It therefore falls within the ambit of the GES and its exception from the GES has prospective effect only. Accordingly, municipal bonds issued prior to January 1, 1990, are exempt from the FIT, and the Department improperly included Fort Wayne National's municipal bond income within the measurement of Fort Wayne National's FIT liability.[3]

## II.

### FEDERAL BOND INCOME

■ Fort Wayne National next claims the Department wrongly included its federal bond income within the measurement of

---

2. They both became effective on January 1, 1990. The FIT was adopted at the 1989 special session of the General Assembly and took effect on January 1, 1990. *See* P.L. 347–1989(ss), § 1. The GES amendment, however, was passed at the 1990 session of the General Assembly and given retroactive effect to January 1, 1990. *See* P.L. 21–1990, § 37. The history of the statutes is outlined in P.L. 68–1991 § 14. *See* Historical and Statutory Notes, IND.CODE 6–8–5–1.

3. The GES amendments were initially passed in 1990, retroactive to January 1, 1990. P.L. 21–1990, § 37. Bonds issued between January 1, 1990, and the date of actual passage may well rest on the same footing as bonds issued between March 11, 1959, and December 31, 1989, and be exempt from the measurement of the FIT. Fort Wayne National, however, owns no such bonds, and the court therefore leaves the question for another day.

the FIT Fort Wayne National owed for 1990. Federal law generally prohibits state taxation of federal obligations, but franchise taxes, like the FIT, are proper if they are nondiscriminatory.

> Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except—
>
> (1) *a nondiscriminatory franchise tax* or another nonproperty tax instead of a franchise tax, imposed on a corporation; and
>
> (2) an estate or inheritance tax.

31 U.S.C. § 3124(a) (emphasis added). This statute is essentially a codification of the constitutional rule first laid down by Chief Justice Marshall in *M'Culloch v. Maryland* (1819), 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 prohibiting states from taxing the federal government. *See Memphis Bank & Trust Co. v. Garner* (1983), 459 U.S. 392, 397, 103 S.Ct. 692, 695, 74 L.Ed.2d 562, 567. *See generally* Paul Hartman, *Federal Limitations on State and Local Taxation* § 6:1 *et seq.* (1981 & Charles Trost, Supp.1992).

The FIT, which is "a franchise tax measured by [a] taxpayer's adjusted gross income or apportioned income for the privilege of exercising its franchise or the corporate privilege of transacting the business of a financial institution in Indiana," IC 6–5.5–2–1(a), is nondiscriminatory on its face. The issue in the present case, however, revolves not around the FIT itself, but rather around the relationship between the GES and the FIT.

As the court has already held, the Department erred by including Fort Wayne National's municipal bond income in com-

puting the FIT. That does not mean, however, that the Department discriminated against Fort Wayne National's federal bond income. A "[s]tate does not discriminate against the Federal Government and those with whom it deals *unless it treats someone else better than it treats them.*" *Washington v. United States* (1983), 460 U.S. 536, 544–45, 103 S.Ct. 1344, 1350, 75 L.Ed.2d 264, 272 (emphasis added) (footnote omitted). The Department included both Fort Wayne National's municipal bond income and its federal bond income in computing the FIT and therefore did not discriminate.

Had the inclusion of the municipal bond income in the FIT been allowed under the GES, the inclusion of the federal bond income would have been allowed under 31 U.S.C. § 3124(a)(1). The GES prohibits retroactive inclusion of the municipal bond income, however, and the federal statute therefore prohibits inclusion of the federal bond income because "[a] state tax that imposes a greater burden on holder of federal property than on holders of similar state property impermissibly discriminates against federal obligations." *Memphis Bank & Trust Co.*, 459 U.S. at 397, 103 S.Ct. at 696, 74 L.Ed.2d at 567–68.

### III.

#### *42 U.S.C. § 1983*

■ Finally, Fort Wayne National claims the Department's actions have been illegal, giving rise to a cause of action under 42 U.S.C. § 1983 (§ 1983).[4] Fort Wayne National makes two specific arguments. First, Fort Wayne National contends the Department violated 31 U.S.C. § 3124 by discriminating against its federal bond income. As the court has already held, however, the Department never dis-

---

**4.** Initially enacted as § 1 of the Civil Rights Act of 1871, § 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immuni-

ties secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. In *Harlan Sprague Dawley, Inc. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 583 N.E.2d 214, this court held it had jurisdiction over § 1983 claims.

criminated against that income. The federal bond income suffered equally with Fort Wayne National's municipal bond income because of an erroneous interpretation of a state statute, the GES. Because there was no violation of the federal bond statute, Fort Wayne National has no § 1983 action. *See Parratt v. Taylor* (1981), 451 U.S. 527, 535–36, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420, 428–29.

 Second, Fort Wayne National argues the GES as originally enacted constituted a contract preventing the State from altering the tax free status of the bonds in question. From this starting point, the argument rapidly leaps over a number of intellectual chasms to the conclusion that the Department is liable to Fort Wayne National under § 1983 for a violation of the Contract Clause, U.S. CONST. art. I, § 10. None of the leaps, however, is successful.[5]

After the GES had been in effect for several years, the legislature enacted IND. CODE 5–1–14–9 (the covenant statute), which provides in pertinent part:

> The general assembly *covenants that it will not adopt, amend, or repeal a statute in a way that impairs the rights and remedies of the owners of obligations*, until the obligations, interest on the obligations, interest on an unpaid installment of interest, and all costs and expenses in connection with an action or proceedings by or on behalf of the owners are fully paid and discharged.

IC 5–1–14–9(a) (emphasis added). Like the GES, the covenant statute applies to municipal bondholder rights. *See* IND.CODE 5–1–1–1. Unlike the GES, however, the covenant statute indicates a strong legislative desire to be bound.

 When faced with two statutes covering the same subject matter, the court must attempt to harmonize them before applying any other rule of statutory construction. *Marion County Sheriff's Merit Bd. v. Peoples Broadcasting Corp.* (1989), Ind., 547 N.E.2d 235, 237. If the conflict is irreconcilable, the more specific statute controls over the more general. *State ex rel. Hatcher v. Lake Superior Court, Room Three* (1986), Ind., 500 N.E.2d 737, 739 (citing *Sanders v. State* (1984), Ind., 466 N.E.2d 424, 428).

To covenant is to "promise solemnly ... [to] pledge in a formal agreement." *Webster's Third New International Dictionary* 524 (1981). The plain meaning of this specific covenant not to impair bondholder rights is that the legislature intended to create a contract. Were the court to find a contract in the GES, the need for, and effect of, the covenant statute would be nullified, and the court cannot presume the legislature to have enacted a nullity. *Monarch Steel Co. v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 611 N.E.2d 708, 713 (citing *Hinshaw v. Board of Comm'rs* (1993), Ind., 611 N.E.2d 637, 638). On the other hand, the GES and the covenant statute can be readily harmonized in accord with the command of *Peoples Broadcasting Corp.*, 547 N.E.2d 235. In its original and amended forms, the GES exempts municipal bonds from most taxes; the covenant statute promises, among other things, that the legislature will not alter the municipal bonds' exempt status after the effective date of May 5, 1989. *See* P.L. 1989–2, § 7. Moreover, when the legislature enacts a statute, courts presume the legislature acted in full knowledge of existing statutes on the same subject. *Johnson County Farm Bureau*, 568 N.E.2d at 583. The legislature, then, was aware of the GES when it enacted the covenant statute. Had the legislature intended the GES to act as a contract, there simply would have been no need to enact the covenant statute.

Finally, in *United States Trust Co. of New York v. New Jersey* (1977), 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92, the United States Supreme Court reviewed a New Jersey statute with language almost identical to that in the covenant statute. The Court held the statute created a contract between the states of New York (which had a recip-

---

**5.** Neither Fort Wayne National nor the Department has briefed this question as fully as a weighty constitutional question merits. Nonetheless, the question having been pleaded and argued, the court will consider it.

rocal statute) and New Jersey, as well as between each of the states and certain bondholders governing the disposition of revenues pledged to pay off the bondholders. *Id.* 431 U.S. at 18, 97 S.Ct. at 1516, 52 L.Ed.2d at 106–07. A subsequent statute changed the disposition of the pledged revenues, and the Court held the later statute violated the Contract Clause. *Id.* 431 U.S. at 19, 97 S.Ct. at 1516, 52 L.Ed.2d at 108.

A dozen years after the Court's decision, our general assembly enacted the covenant statute. *See* P.L. 1989–2, § 7. Normally, if a court of last resort has construed a statute and the legislature subsequently re-enacts that statute without changing the statutory language, courts presume the legislature adopted the earlier judicial construction. *See City of Indianapolis v. Schmid* (1968), 251 Ind. 147, 240 N.E.2d 66; *Department of Treasury v. City of Linton* (1945), 223 Ind. 363, 60 N.E.2d 948. Moreover, when a statute contains language

similar to that in a statute from another jurisdiction, federal court decisions construing the other statute are persuasive. *See, e.g., Indiana Civil Rights Comm'n v. Sutherland Lumber* (1979), 182 Ind.App. 133, 394 N.E.2d 949.

These rules have special bearing in the present case because the covenant statute's critical language is virtually identical to the New Jersey statute's and, more importantly, because the covenant statute has constitutional Contract Clause ramifications. The United States Supreme Court decided a federal constitutional question, of which it alone is the final arbiter, and the general assembly enacted the covenant statute in the wake of that decision. In this situation, the court is fully prepared to state that the previously existing GES does not constitute a contract within the meaning of the Contract Clause.[6] Fort Wayne National has no § 1983 claim.

---

**6.** Even if, however, the GES creates a contract, Fort Wayne National would nonetheless have no claim. First, the legislature did not violate the GES by amending it because the amendment has only prospective effect; that is, it does not apply to previously issued bonds.

Second, even though the Department erroneously tried to give the amendment retroactive effect, it did not thereby work a violation of the Contract Clause. The Contract Clause forbids the states to pass any *"law"* impairing the obligation of contracts." U.S. CONST., art. I, § 10 (emphasis added). Although an administrative agency may perform acts that fall within the meaning of "law" as the word is used in the Contract Clause, only those acts which are legislative in nature will qualify. *See Louisville & Nashville R. Co. v. Garrett* (1913), 231 U.S. 298, 318, 34 S.Ct. 48, 56, 58 L.Ed. 229, 244–45. The Department's action in this case, however, was an adjudicative one, *see Indiana Dep't of Environmental Mgt. v. AMAX, Inc.* (1988), Ind.App., 529 N.E.2d 1209, and therefore not subject to the Contract Clause.

Assuming *arguendo* the Department's action did run afoul of the Contract Clause, Fort Wayne National would still face the impossible burden of showing a Contract Clause violation will support a § 1983 action. The only United States Supreme Court decision on the question is *Carter v. Greenhow* (1885), 114 U.S. 317, 5 S.Ct. 928, 29 L.Ed. 202, in which the Court unequivocally held a Contract Clause violation will not support a § 1983 action. In *Dennis v. Higgins* (1991), 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969, the Court held violations of the Commerce Clause, U.S. CONST., art I, § 8, were

violations of a constitutional "right" within the meaning of § 1983. But while there is some similarity in the construction of the two clauses because they both lie within Article I, *Dennis,* contrary to Fort Wayne National's contentions, is wholly insufficient authority to overrule *Carter.* Our supreme court's recent decision in *Indiana Dep't of State Revenue v. Felix* (1991), Ind., 571 N.E.2d 287, *cert. dismissed* (1992), —— U.S. ——, 112 S.Ct. 1073, 117 L.Ed.2d 278, makes clear that lower courts should exercise a great deal of restraint before declining to follow the precedential effect of old United States Supreme Court decisions, and until higher authority clearly runs to the contrary, this court will accordingly follow *Carter.*

Even if *Dennis* had overruled *Carter,* however, Fort Wayne National would still not prevail because the company has brought this action against the Department and its Commissioner acting in his official capacity. "When sued for damages, states and state officials acting in their official capacities are not persons under ... § 1983." *Felix,* 571 N.E.2d at 295 (citing *Will v. Michigan Dep't of State Police* (1989), 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45, 58). As for the injunctive relief Fort Wayne National seeks, the court's decision that the GES amendment has only prospective effect renders the need for extraordinary equitable relief moot, and Fort Wayne National therefore has no cognizable claim under § 1983. *See id.* at 295.

Finally, to the extent Fort Wayne National's argument can be liberally construed to include a claim that the covenant statute has been violated, the preceding discussion applies with equal force to that statute.

*CONCLUSION*

The GES amendments are not retroactive, and the Department therefore improperly included the income from Fort Wayne National's outstanding municipal bonds in its calculation of Fort Wayne National's FIT liability. Because the municipal bond income cannot be included, 31 U.S.C. § 3124 precludes the inclusion of federal bond income. Fort Wayne National, however, has failed to show it has a valid cause of action under 42 U.S.C. § 1983.

Because there is no genuine issue of material fact and the parties have shown their entitlement to judgment as a matter of law, the court GRANTS Fort Wayne National's motion for summary judgment on the questions of the inclusion of the municipal and federal bond income within the calculation of the FIT. The court also GRANTS summary judgment to the Department on Fort Wayne National's § 1983 claim.