Rodney LAWRENCE, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 283S63.

Supreme Court of Indiana.

July 2, 1984.

Susan K. Carpenter, Public Defender, Carolyn J. Fitch, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

Defendant, Rodney Lawrence, was convicted by a jury in 1978 of entering to commit a felony, Ind.Code § 35-13-4-5 (Burns 1975) (repealed Acts 1976, P.L. 148) and of fleeing a police officer, Ind.Code § 35-21-2-1 (Burns 1975) (repealed Acts 1976, P.L. 148). He was also found to be a habitual offender, Ind.Code § 35-8-8-1 (Burns 1975) (repealed Acts 1976, P.L. 148) and thus received a life sentence. Defendant has raised the following five issues in this belated direct appeal:

1. Whether defendant was denied his right to effective assistance of counsel;

2. Whether trial court erred in denying a motion for a continuance made by defendant;

3. Whether the evidence was sufficient to support the conviction for entering to commit a felony;

4. Whether the life sentence constituted cruel and unusual punishment; and

5. Whether the finding that defendant was a habitual offender must be vacated since three of four prior convictions were allegedly void.

A review of the facts most favorable to the state shows that on July 19, 1977, Loretta Jones observed two men walking quickly back and forth several times from a neighbor's house to a car parked in the neighbor's drive. Jones also heard a loud pounding noise coming from the house. Jones was not able to see the faces of the men and her view was partially obscured by the shadow of a large tree. She eventually called the Marion Police Department and then continued to watch the car. Jones testified that she saw a man run from the neighbor's house and jump into the car as it left the drive.

Officer Jerry Herring arrived on the scene as the car was leaving the drive. Herring also saw a man run and jump into a car. Herring aimed the beam of his spotlight through the back window of the car and observed two men turn and look at him. The two men then attempted to flee in the car and were pursued by Officer Herring. A few blocks away the car hit a bump and came to a stop. Herring identified the driver of the car as defendant and

the passenger as Major Stephany, defendant's nephew. Herring found two shotguns, two television sets, and a stereo system in the car. The victim, Donna Barbour, identified these as being the same items that were taken from her house.

## I.

Defendant has raised a claim of ineffective assistance of counsel. Before examining the particular facts of the issue, however, we must re-examine our traditional standard of review. This re-examination is necessary because of the United States Supreme Court's decision in *Strickland v. Washington*, (1984) —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674, in which the Court for the first time established guidelines to determine ineffective counsel claims.

The Supreme Court in *Strickland* developed a two-step analysis. Under the first step, the "performance component," the focus is on the actual performance of the attorney in rendering assistance to his client. In order for there to be ineffective assistance, there must be a showing that counsel acted unreasonably. A "strong presumption" exists, however, that counsel rendered adequate legal assistance. To overcome this strong presumption:

> "[a] convicted defendant ... must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."

*Id.*, —— U.S. at ——, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

■ The second step of the *Strickland* test, the "prejudice component," focuses on the prejudice to the client resulting from the attorney's unreasonable acts. Both step one and step two must be passed before there can be a finding of ineffective counsel:

> "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.... The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."

*Id.*, —— U.S. at ——, 104 S.Ct. at 2067, 80 L.Ed.2d at 696 (citation omitted). Except in certain situations where prejudice will be presumed,[1] a defendant must affirmatively prove he was prejudiced by his counsel's conduct by showing there is a reasonable probability that, but for the unprofessional errors, the result of the proceedings would have been different. A court in making its determination on the issue must consider the totality of the evidence to ascertain whether the defendant has met the "burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* —— U.S. at ——, 104 S.Ct. at 2069, 80 L.Ed.2d at 699.

With these new rules in mind, we find that defendant has failed to establish that he received ineffective assistance of counsel.[2] Defendant points to six errors which

---

1. These are: actual or constructive denial of assistance of counsel altogether; state interference with counsel's assistance; and, in certain cases, actual conflicts of interest. *Strickland,* —— U.S. at ——, 104 S.Ct. at 2067–68, 80 L.Ed.2d 696–97.

2. Although employing somewhat different terminology, an analysis of ineffective counsel claims under *Strickland,* is actually very similar to our traditional approach, i.e., the mockery of justice test as modified by the adequate legal representation standard. As such, the outcome

he apparently claims amount, either individually or collectively, to ineffective assistance of counsel. Defendant first contends that his trial counsel failed to adequately explain the terms of a plea agreement offered to defendant under which defendant would have received a one-year suspended sentence. Defendant contends that his first attorney, Anne Wilcox, misinformed him of the possible penalties for two of the charged offenses. In addition, defendant asserts that Wilcox misadvised him about the possibility that the trial court might reject the plea.

■ The record here shows that on February 13, 1978, Wilcox sent defendant a lengthy letter explaining the consequences of pleading guilty and the rights defendant would be foregoing. While this letter did inadvertently state penalties under the new penal code rather than the old, we cannot say that this resulted in defendant receiving ineffective counsel. The test is one of reasonableness; this does not require perfection. Just as before, isolated mistakes, poor strategy, or bad tactics do not necessarily amount to ineffective assistance of counsel. *Hollon v. State*, (1980) 272 Ind. 439, 398 N.E.2d 1273; *Lowe v. State*, (1973) 260 Ind. 610, 298 N.E.2d 421.

■ Furthermore, it appears from the record that defendant's refusal of the plea bargain was as much the result of a steadfast desire to establish his innocence at a trial as it was of any misunderstanding about the plea. At the hearing on the plea defendant stated:

"That's why I couldn't accept it because number one I would like for the record to show that every ... on every occasion that I have been guilty, I pleaded guilty. On every occasion regardless of what it was. And in this case I'm not guilty and I'm not going to plead guilty to this because I'm not guilty."

Defendant also stated that he understood the plea agreement. Although defendant did appear to be confused about whether the trial judge was bound by the plea

of defendant's claim here is not changed by the

agreement, we cannot say that Wilcox's failure to more fully explain the situation constituted ineffective assistance.

■ Defendant next asserts that he was denied effective assistance of counsel when neither Wilcox nor the subsequent trial attorney, Charles Scruggs, failed to timely move for dismissal of an allegedly defective information. This information, charging defendant with being a habitual offender, listed prior felonies from 1954, 1958, and 1960. The 1958 felony, however, failed to mention the court and county from which the conviction was obtained. Defendant now claims that his attorneys should have made a motion to dismiss prior to arraignment, on the ground that the information failed to state the crime with sufficient certainty. *See Shutt v. State*, (1954) 233 Ind. 120, 117 N.E.2d 268. We cannot say that the failure to raise the motion was unreasonable. The other two felonies listed both contained the county and court and were sufficient to support a habitual offender charge. It was well within the range of professionally reasonable judgment for counsel not to have raised a motion to dismiss.

Defendant's third allegation concerns the failure of Scruggs to properly request a continuance to secure the attendance at trial of Major Stephany. Scruggs did not request a continuance until the day of the trial and did not set forth any reasons for the late filing. *See* Ind.Code § 35-1-26-1 (Burns 1975) (repealed Acts 1981, P.L. 298). Scruggs also did not publish Stephany's deposition in which Stephany testified that he had committed the burglary and that the defendant had no knowledge of Stephany's activity.

■ In this instance, even if we were to find counsel's actions unreasonable, defendant has failed to show sufficient prejudice for us to find ineffective assistance. The substance of Stephany's testimony about defendant's lack of knowledge was introduced through other defense witnesses. The jury was given the opportunity to

new test.

hear both sides of the story. Stephany's testimony might possibly have bolstered the defense's case, but we cannot say, with a reasonable probability, that, but for the attorney's conduct, the outcome of the case would have been different.

■ Defendant next contends his trial counsel was ineffective when he failed to prevent the jury from learning the penalty for being a habitual offender. The record shows that Scruggs mentioned the penalty during opening argument on the habitual offender trial. The penalty was also contained in two instructions given to the jury. Again, we find that there was not sufficient prejudice to require reversal. Indeed, Scruggs's statements may well have created some sympathy in favor of defendant:

> "But I want to tell you to ... when listening to whatever evidence the State may or may not present to you, I want you to remember that the penalty, if Mr. Lawrence is convicted to Count III, will change from one to five years to imprisonment during his life. It carries a penalty of life imprisonment. So I want you to listen very carefully, even more carefully than you did during the trial of this cause and realize now that your duty is even more awesome than you had first believed. With that in mind, Ladies and Gentlemen, I will sit down and attempt to do what I can to further represent Mr. Lawrence in this matter, and I want you to know initially at the outset that the penalty that he is facing here that this is an extremely tense situation for Mr. Lawrence and rightly so. I'm sure you can all understand that. And that if he doesn't at all times handle himself properly, I hope that he will but if he doesn't I hope that you will not hold that against him and ... and please not consider anything such as that in your arrival at a verdict. Thank you."

Also, the instructions stated clearly that the court would set the sentence, not the jury. There was no error.

During the habitual offender portion of trial the trial judge granted Scruggs's request to withdraw from the defense. Scruggs requested to withdraw when, against his advice, defendant indicated he would testify on his own behalf. Defendant now claims Scruggs improperly withdrew and that in doing so Scruggs failed to take reasonable steps to avoid prejudice to defendant.

■ We find that Scruggs did not act unreasonably in withdrawing from the case. Prior to the habitual offender proceeding defendant attempted to dismiss Scruggs and indicated dissatisfaction with the representation defendant had already received. The trial judge originally allowed defendant to proceed *pro se* but required Scruggs to remain in attendance. The judge then changed his mind, denied defendant's request, and ordered Scruggs to continue. Scruggs continued to represent defendant until defendant indicated he wanted to testify. When the trial judge questioned defendant about allowing the withdrawal, defendant responded, "He is free to withdraw, Your Honor," and later stated to Scruggs, "You're free to withdraw." Given the less than harmonious relationship between Scruggs and defendant as well as the acquiescence of defendant to the withdrawal, we cannot say the attorney's conduct was unreasonable.

■ Finally, defendant contends he was denied his right to effective assistance of counsel because he did not make an informed, knowing waiver of the right to counsel. Defendant asserts that Scruggs should have advised him of the dangers of proceeding *pro se*. We find no unreasonable conduct. Defendant requested to proceed *pro se* in large part because of his lack of confidence in his attorney. The record reveals that defendant on several occasions stated he did not believe his attorney was doing enough. The record also shows that the trial judge told defendant after Scruggs withdrew that defendant was entitled to assistance of counsel at any time. Defendant continued on his own. In short, it cannot be said that any further advisement by Scruggs would have altered defendant's decision. *See generally, Nation v. State,* (1983) Ind., 445 N.E.2d 565.

Therefore, none of the errors above, either individually or in combination, demonstrates that defendant was deprived of his right to effective assistance of counsel. Thus we cannot reverse on this ground.

## II.

■ Defendant asserts the trial judge exceeded his discretion by denying defendant's motion for a continuance filed on the day of the trial. Defendant claims the trial judge's ruling denied defendant of the right to compel the attendance of a principal witness.

The record shows that the trial judge did grant two continuances at defendant's request. The first was on February 16, 1978, when trial was reset for June 28, 1978. When defendant's first attorney withdrew the trial court granted another continuance, with trial set for October 2, 1978. On October 2, defendant requested another continuance in order to secure the attendance of Major Stephany. This motion was denied. The trial judge stated that his reason for doing so was that defendant's "prior counsel have had confrontation with [the] witness, Major Stephany, and that a subpoena for his presence at the trial of the defendant was not issued until the 28th day of September, 1978." We find no abuse of discretion. Arrangements for the attendance of Stephany could have been made earlier and the trial judge was not required to continue the trial until Stephany's appearance was assured.

■ Defendant also claims that the denial of his motion for a continuance "violate[d] the constitutional principle of equal protection enunciated in *Yick Wo v. Hopkins*, (1886) 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220...." Defendant bases this contention primarily on the fact that the trial judge granted a motion for continuance filed by the prosecutor but denied his. This is not sufficient disparate treatment to violate the Equal Protection Clause. We find no error here.

## III.

Defendant next contends the evidence was insufficient to support his conviction for entering to commit a felony. Defendant claims the evidence was insufficient to show that he actually entered the victim's house or that he knew the items found in the car were stolen.

■ Under our standard of review we may neither weigh the evidence nor judge the credibility of witnesses. We look at the evidence most favorable to the state and all reasonable inferences drawn therefrom to determine whether there is substantial evidence of probative value to support the conclusion of the trier of fact. *Walker v. State*, (1982) Ind., 442 N.E.2d 696; *Fielden v. State*, (1982) Ind., 437 N.E.2d 986.

■ The evidence in this case was sufficient to support the conviction. Testimony of the witnesses established that two people were seen going back and forth between a car and the front door of the victim's house and that the two were carrying objects. When the police arrived the two fled in the car but were soon apprehended. In plain view in the back seat were the items eventually identified as those stolen from the victim. Also found in the car was a tire iron. The tire iron matched an imprint on the frame of a pried-open window of the victim's house. The tire iron also had traces of white paint on it that matched the paint on the window frame. The evidence here was sufficient to support the conviction.

## IV.

■ As noted in Issue I, the prosecution offered defendant a plea agreement in which defendant would have received a one-year suspended sentence. The plea was rejected, and defendant received a life sentence after he was found to be a habitual offender. Defendant now contends that the imposition of the life sentence constituted cruel and unusual punishment in violation of both the state and federal constitutions. Defendant's argument is essentially that the plea agreement indicated

that the state's penal interest would be satisfied with a one-year sentence. Defendant claims that any decision to pursue the life sentence under the habitual offender charge must have been based on prosecutorial vindictiveness and that the sentence was so excessive that it rose to the level of cruel and unusual punishment.

We have repeatedly held that the habitual offender statute does not impose cruel and unusual punishment. *Erickson v. State*, (1982) Ind., 438 N.E.2d 269; *Morris v. State*, (1979) 271 Ind. 593, 394 N.E.2d 151; *McMahan v. State*, (1978) 269 Ind. 566, 382 N.E.2d 154. Nor does the decision to try a defendant as a habitual offender normally constitute vindictive justice. *Smith v. State*, (1981) Ind., 422 N.E.2d 1179; *Ferguson v. State*, (1980) 273 Ind. 468, 405 N.E.2d 902. Here, defendant appears to have rejected the plea agreement because he believed he was innocent. He at one point stated specifically that he preferred a jury trial. Defendant was aware that the state had filed a habitual offender charge against him. Thus we cannot say, as defendant suggests, that defendant was being punished for his ignorance of the law. Defendant consistently maintained his innocence; once he rejected the plea, the prosecution was entitled to pursue its original charges. Here those charges included a habitual offender count, which at the time of this offense carried a punishment of life imprisonment. We find no error here.

### V.

Defendant lastly contends that his conviction as a habitual offender must be vacated on the ground that three of four prior convictions were void because the records of the convictions failed to show defendant waived his right to counsel. The record of this case, however, shows that no objection was made on this ground at trial. We have previously held that this issue, when not raised at trial, does not merit consideration under the "fundamental error" doctrine. *Stone v. State*, (1982) Ind., 437 N.E.2d 76 (citing *Nelson v. State*,

(1980) Ind., 409 N.E.2d 637). The issue is therefore waived.

For all of the foregoing reasons, there is no trial court error, and the judgment of the trial court should be affirmed.

Affirmed.

GIVAN, C.J., and DeBRULER and PRENTICE, JJ., concur.

PIVARNIK, J., concurs in result.