William C. MAY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A02–9010–CR–568.[1]

Court of Appeals of Indiana,
Fifth District.

Sept. 23, 1991.

---

1. This case has been diverted to this office by order of the Chief Judge.

John M. Eisele, Anderson, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

BARTEAU, Judge.

William C. May appeals after being convicted by a jury of escape, battery, four counts of confinement and two counts of criminal recklessness. He was sentenced to one hundred and seven years, the maximum possible imprisonment.

The evidence favorable to the verdict revealed that in the early afternoon on January 6, 1989 May overpowered the police officer who was driving him back to detention in the Madison County jail after transport to a hospital for medical treatment. May took the officer's sidearm, used the officer's key to release himself from handcuffs, and at gunpoint forced the officer to drive him to a house in Anderson, in search of Sharen Beeman, his then estranged, now former wife, whose allegation of rape and confinement had led to May's detention in the jail pending trial.

The officer escaped at the moment he stopped the car. May entered the house, found Beeman, along with two other women, and took all three hostage. The other two women escaped within the next few minutes. During those first minutes, May fired the gun twice, in the direction of, first, one of the women, and second, a police officer who had hastened to the scene after encountering the officer from whose custody May had escaped. After an eighteen-hour standoff, May threw down his gun, released Beeman, and surrendered.

May raises six issues for our review, restated as:

1. Was May entitled to appointment of a special judge to preside over his trial?

2. Was May denied a fair trial by appearing before the jury in leg shackles?

3. Did May's convictions for battery and confinement of the police officer from whom he escaped violate the prohibition against double jeopardy?

4. Did May receive effective assistance of counsel?

5. Did the trial judge adequately explain imposition of enhanced and consecutive sentences?

6. Did May have enough time to review his presentence report?

We affirm the convictions, but remand for a more detailed sentencing statement. Additional facts are supplied where necessary.

## SPECIAL JUDGE

Pre-trial, May moved for appointment of a special prosecutor, for a special judge, and for a special judge to rule on the first two motions. The trial judge, the Honorable Thomas Newman, Jr., granted the third motion. After a hearing, the special judge granted May's motion for a special prosecutor, but denied the motion for a special judge.

■ During the course of the stand-off, negotiations between May and the authorities had yielded an agreement for May's surrender in exchange for dismissal of the pending rape charge if Beeman would recant her accusation, along with a limit to May's culpability from the escape and hostage situation and a promise to not prosecute Beeman for false swearing if she recanted her accusations of rape. The agreement was reduced to writing by Prosecutor Lawler, who signed it. When May insisted that the one-page document should also be signed by a judge, Judge Newman was called upon for his signature. Those signatures prompted May's motions—he argued that he planned to raise an issue concerning the agreement at trial, that Prosecutor Lawler and Judge Newman would be called as witnesses, and that they therefore should be disqualified from the case.

A hearing was held before a special judge in August, 1989, some seven months after May's desperate hours. Prosecutor Lawler testified that during the stand-off, he had telephoned Judge Newman at two or three o'clock in the morning, asking him to come to the Anderson Police Station to sign the document. Judge Newman described his memory of the occasion as "vague." He remembered reading and signing the document, and acknowledged his signature, but could not remember whether it was meant to be "some sort of plea agreement." Judge Newman's testimony was "I cannot remember what the intent or the meaning of it was." Record

at 257. Judge Newman further testified that he did not speak with May at that time, that he did not participate in drafting the agreement, that he had formed no opinion as to May's guilt, that he harbored no bias one way or the other in the case, and that he believed he could be fair in presiding over May's trial.

In arguing that Judge Newman should have recused himself, or that the special judge should have granted the motion for a special judge, May directs our attention to the rules of judicial ethics:

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

Ind.Code of Judicial Conduct 3(C)(1)(a).

■ The ruling of a trial judge, or, in this case, of a special judge, on a motion for change of judge is reviewed only for abuse of discretion. Ind.Crim.Rule 12. "The law presumes that a judge is unbiased and unprejudiced in matters which come before him. The record must show actual bias and prejudice against the defendant before a conviction will be reversed on the ground that the trial judge should have been so disqualified." *Beverly v. State* (1989), Ind., 543 N.E.2d 1111, 1115 (no showing of actual prejudice or bias although trial judge had signed probable cause affidavit and arrest warrant). *See also Brim v. State* (1984), Ind., 471 N.E.2d 672 (no abuse of discretion in denying motion where trial judge presided over defendant's aborted guilty plea hearing and accepted guilty plea from co-defendant that included factual basis implicating defendant); *Jones v. State* (1981), Ind.App., 416 N.E.2d 880 (no error where trial judge had presided over bench trial resulting in conviction of co-defendant; no showing of personal prejudice); *Stacks v. State* (1978), 175 Ind.App. 525, 372 N.E.2d 1201, *reh'g denied, trans. denied* (holding no abuse of discretion for non-recusal where trial judge rejected plea agreement but played no part

in negotiating terms, and defendant failed to allege specific acts of prejudice by judge during trial).

May alleges no specific instances of bias or prejudice by Judge Newman. Moreover, we have reviewed the trial transcript and found nothing to indicate a prejudiced judge. Based on Judge Newman's testimony, and consistent with the foregoing cases, we see here no abuse of discretion.[2] May's reliance on *Stivers v. Knox County Dept. of Pub. Welfare* (1985), Ind.App., 482 N.E.2d 748 is unpersuasive because of the factual differences between that case and his.

### LEG SHACKLES AT TRIAL

■ Just before, and again during *voir dire*, May moved for release from leg irons. The trial judge denied both motions, which May characterizes as reversible error, arguing that because of the configuration of the courtroom, the jury venire could see he was shackled, thereby prejudicing him in their eyes and depriving him of his presumption of innocence.

A comprehensive analysis of the "shackled defendant" issue appears in *Coates v. State* (1985), Ind.App., 487 N.E.2d 167. From *Coates* we learn that due process under the federal constitution includes the right of an accused "to appear before a jury free of physical restraints." *Id.* at 168. This right forestalls disparagement of the accused's presumption of innocence, allows the accused to take notes and otherwise participate in the defense free of distraction, and protects the dignity of our criminal justice system. *Id.* at 168–69.

■ However, "the right to appear at trial unrestrained is not absolute ... and can be denied if necessary to prevent the escape of the defendant, maintain courtroom decorum, or ensure the safety of persons present in the courtroom." *Id.* at 169. This issue is committed to the discretion of the trial judge, who must support, with facts and reasons sufficient for meaningful appellate review, a decision to restrain the accused. *Id.* Error by the trial judge is subject to harmless error analysis. *Id.* at 170.

The trial judge's decision to restrain May appears to have been influenced by the facts of the case. Evidence favorable to the verdict, entered through the testimony of Officer Cole, the deputy sheriff who drove May to and from the hospital, was that when driven from jail to the hospital, May was handcuffed, in leg irons, and in the back seat of the police cruiser, separated from Cole by the "cage," or screen barrier. However, on the return trip, Cole released the leg irons and allowed May to ride in the front seat. From that vantage, May was able to overpower Cole by hitting him in the head with his handcuffed hands after diverting Cole's attention.

From the record, it appears that May attended the trial free of handcuffs, but restrained by leg irons. Ruling on May's motion for freedom from restraint, the trial judge stated:

> The Court will take every precaution to secure that no juror sees him in leg shackles. Mr. May will come ... into the Courtroom before the jury ... so he can be seated with his legs under the counsel table so nobody can see.... And then the jury will be excused and leave the Courtroom before Mr. May does. The Court does not want the jury to see Mr. May's shackles, but the Court also feels like due to the history in this case and the attempts that have been allegedly made by the defendant that [motion to release restraint will be denied].

Record at 314–15.

Although we cannot ascertain the meaning of the trial judge's reference to "the attempts that have been allegedly made," the reference to "the history in this case" is all too clear—May was on trial for escape through violent means. Although the trial judge made no finding that May posed a threat of escape or violence in the courtroom, that possibility is implicit in the decision, a plausible concern given the case's factual underpinnings. More importantly,

---

**2.** We accordingly decline to address the State's second argument, urging affirmance on the ground of procedural default in May's motion practice.

nothing indicates that the jury indeed saw the leg irons. The trial judge acted to prevent the jury from seeing the leg restraints, and in so doing balanced a perceived need to forestall an escape attempt against the possible prejudice if the jury had. We see no abuse of discretion on this issue. *See Trotter v. State* (1990), Ind., 559 N.E.2d 585, 589.

## DOUBLE JEOPARDY

■ The State charged May with battery, I.C. 35–42–2–1, as a Class D felony (resulting in bodily injury to a law enforcement officer), for his actions in overpowering Cole, and with confinement of Cole, I.C. 35–42–3–3, as a Class B felony (committed while armed with a deadly weapon). The jury returned verdicts of guilty as charged on confinement, and guilty of battery, reduced, however, to a Class A misdemeanor (committed against a law enforcement without bodily injury). From the evidence favorable to the verdicts, these convictions followed from May's conduct in using his handcuffed hands to strike Cole in the face and head, then, having grabbed Cole's gun, forcing Cole at gunpoint to drive to the location where May hoped to find Beeman. May argues that these actions were so closely connected in time and circumstance that treating them as separate crimes violates principles of double jeopardy. In his view, the battery should have been merged into the confinement.

Both May and the State cite *Stwalley v. State* (1989), Ind., 534 N.E.2d 229, *reh'g denied* for a concise explanation of the issue: "Double jeopardy prohibits multiple punishment for the same offense. When the State charges a defendant with [two separate crimes] based upon the same conduct, the same harm to the victim, and over the same short span of time, one of the convictions must fall." *Id.* at 231.

We see no double jeopardy here. Although the relevant time span may have been short, the charges of battery and confinement were neither based on the same conduct nor on the same harm to the victim. Battery entails a rude, insolent or angry touching and was accomplished here when May struck Cole; confinement entails the non-consensual restriction of a person's liberty and was accomplished here when May forced Cole at gunpoint to drive the car as May directed. *See McDonald v. State* (1987), Ind., 511 N.E.2d 1066 (convictions for confinement and attempted battery did not violate double jeopardy where defendant pinned officer to floor by sitting on his chest while waving a knife; the two crimes require proof of different elements).

May quotes the passage from *Armstead v. State* (1990), Ind.App., 549 N.E.2d 400, 402 that "[w]hen a defendant harms a single entity as a result of a single incident ... he should be answerable for the greatest harm stemming from that single incident." May's reliance on *Armstead* is misplaced, because the question there was whether a single confrontation between a suspect and several police officers could lead to multiple convictions for resisting law enforcement. The *Armstead* court reasoned that the charge of resisting law enforcement involves resistance to "duly constituted authority ... [rather than] resisting individual representations of that authority." *Id.* at 401. Therefore, the resister had caused but a single harm and could not be subjected to multiple punishments. In contrast, the charges here represented multiple criminal acts committed against one person, based on different acts causing different harms and requiring proof of different elements. Therefore, charging May with both battery and confinement was permissible.

## ASSISTANCE OF COUNSEL

May argues that he received ineffective assistance of counsel. In order to prevail on this point, May must show both (1) that his counsel's performance was deficient, falling outside the wide range of competent, professional assistance, and (2) that he suffered prejudice due to that deficient performance, "by showing there is a reasonable probability that, but for the unprofessional errors, the result of the proceedings would have been different." *Lawrence v. State* (1984), Ind., 464 N.E.2d 1291, 1294. Reviewing courts strongly pre-

sume effective counsel. *Id.* "[I]solated mistakes, poor strategy, or bad tactics do not necessarily amount to ineffective assistance of counsel." *Id.* at 1295. For example, the decision to call a particular defense witness is a matter of trial strategy, and failure to call a witness will therefore not be deemed ineffective assistance of counsel in the absence of a "clear showing" of prejudice. *Grigsby v. State* (1987), Ind., 503 N.E.2d 394, 397.

■ May characterizes as ineffective assistance his counsel's failure to call witnesses who would have testified that Cole allowed May to leave the hospital unhandcuffed, that in fact Cole tossed the handcuffs to May, who put them in his pocket. May also argues that his counsel failed to communicate with an investigator and was unable to locate a potential witness.

On the first point, the State answers: testimony to the effect that May was not handcuffed while being driven back to the jail would not have changed the outcome of the trial, because of "the lack of any serious dispute whether [May] was in custody as he was being transported from the hospital by Cole." Appellee's Brief at 24. We agree with the State's view of the case, and therefore hold that May has not shown the necessary clear prejudice. *Grigsby, supra.*

■ On the other contentions, the State answers: "[May] does not identify this 'potential witness' in his brief or explain what the testimony of that witness would have been and how it would have effected [sic] the outcome of the case" and that "[May] does not allege or prove what relevant information was in the possession of this investigator or what defense that information could have been used to establish." Appellee's Brief at 24–25. Again, we agree with the State's argument. May has not carried his burden of overcoming the presumption of competent counsel. Although the potential witness is identified, through citation in May's brief to the record, as one Joe Wiley, nothing indicates the substance of Wiley's unrealized testimony. Similarly,

May makes no argument concerning exculpatory evidence that may have been uncovered by the unheard investigator. These unsupported assertions that not all the evidence was heard are simply inadequate to establish ineffective assistance of counsel. *See Marsillett v. State* (1986), Ind., 495 N.E.2d 699, 706 (supreme court "will not find counsel ineffective for failure to investigate facts absent a showing that the proper functioning of the adversarial process was undermined.").

### SENTENCING STATEMENT

■ On each of the five Class B felonies (escape and four counts of confinement), Judge Newman sentenced May to twenty years, adding to the presumptive ten-year sentence the maximum enhancement of ten years.[3] On each of the two Class D felonies (two counts of criminal recklessness), the sentence imposed was three years, adding to the presumptive one and one-half year sentence the maximum enhancement of one and one-half years.[4] On the Class A misdemeanor (battery), May received the maximum one-year imprisonment.[5] All sentences were ordered to be executed, and served consecutively, for a total term of imprisonment of one hundred and seven years—the absolute maximum.

The trial judge explained his sentencing decision as follows:

The Court finds that aggravation for enhancing the penalties beyond the presumptive and for running sentences consecutively instead of concurrently would be the risk that the defendant would commit another crime, his prior criminal history, personality and his nature, nature and circumstances of the crimes committed in this case, the defendant's prior criminal record, the statements made by the victims in the case. The Court further finds in regard to sentencing that imposition of a reduced sentence or suspension of the sentence with extensive probation would depreciate the seriousness of the crimes committed, the de-

3. I.C. 35–50–2–5.

4. I.C. 35–50–2–7.

5. I.C. 35–50–3–2.

fendant is in need of long term imprisonment, the defendant's record and criminal activity indicates a very slight likelyhood [sic] of rehabilitation.

Record at 1297–98.

■ Trial judges are vested with wide discretion to impose enhanced sentences, or to order consecutive service of multiple sentences, or both. *Shippen v. State* (1985), Ind., 477 N.E.2d 903. However, if sentences are enhanced, or made consecutive, or both, due to aggravating circumstances, the trial judge must state the reasons underlying the sentencing decision. I.C. 35–38–1–3. The explanation cannot merely recite the statutory factors, but rather must relate in some detail the facts peculiar to the defendant and the crime, thus facilitating appellate review of sentencing. *Page v. State* (1981), Ind., 424 N.E.2d 1021, 1023, *appeal after remand* (1982), Ind., 442 N.E.2d 977, *reh'g denied.* For example, "if a defendant has a history of criminal activity, the incidents comprising such activity should be recited." *Hammons v. State* (1986), Ind., 493 N.E.2d 1250, 1254, *reh'g denied* 496 N.E.2d 1284.

■■ An adequate explanation contains at least three elements: (1) a list of the significant aggravating and mitigating factors, (2) a statement of the specific reason why each factor is aggravating or mitigating, and (3) an evaluation and balancing of the factors. *Robinson v. State* (1985), Ind., 477 N.E.2d 883. If an explanation appears inadequate, the appellate court may order an enhanced sentence reduced to the presumptive, or change consecutive sentences to concurrent, or remand for a more detailed statement, or examine the record for indications that the trial court engaged in the required evaluative process. *See Brown v. State* (1982), Ind., 442 N.E.2d 1109, 1118, *reh'g denied; Erby v. State* (1987), Ind., 511 N.E.2d 302, 304; *Henderson v. State* (1986), Ind., 489 N.E.2d 68, 72.

Cases discussing the adequacy of a sentencing statement often cite the following passage:

[I]n every case where increased sentences are imposed the record must show that careful consideration commensurate with the denial of liberty involved has been given to the defendant. Due care must be taken to demonstrate a thorough and thoughtful sentencing decision supported by specific and detailed reasons and an indication that the court has considered the goal of rehabilitation. The record must show that the determination of the increased sentence was based upon a consideration of the facts of the specific crime, the aggravating and mitigating circumstances involved and the relation of the sentence imposed to the objectives which will be served by that sentence.

*Abercrombie v. State* (1981), 275 Ind. 407, 415, 417 N.E.2d 316, 320, *appeal after remand* (1982) 441 N.E.2d 442.

We find no demonstration of the mandatory "specific and detailed reasons" in support of the sentence. *Id.* The statement merely recites statutory aggravating factors from I.C. 35–38–1–7.1. Its tenor is remarkably like that deemed inadequate as "perfunctory" and "conclusory" in *Robey v. State* (1990), Ind., 555 N.E.2d 145, 152. *See also Roop v. State* (1991), Ind.App., 571 N.E.2d 568, *reh'g denied, trans. pending.*

The denial of liberty in this case is extreme. To start, each of May's seven crimes were subject to statutory increases in penalty class, due to either using the gun or committing the crime against a police officer. Then, each was enhanced to the maximum term of imprisonment. Finally, all sentences were ordered to run consecutively.

*Abercrombie* requires the trial court to show consideration to sentencing commensurate with the denial of liberty. Here, the denial of liberty is extreme, yet the sentencing statement is little more than cursory. The court below, by not making a "specific and individualized statement of why the particular facts of this case" support the sentence, *Allen v. State* (1982), Ind., 439 N.E.2d 615, 620, *appeal after remand* (1983), 453 N.E.2d 1011, has not complied with the spirit of *Abercrombie.* *"The statement supportive of enhanced*

*or consecutive sentences should not be grudgingly given.*" *Farina v. State* (1982), Ind., 442 N.E.2d 1104, 1106 (emphasis in original), *appeal after remand* (1983), 445 N.E.2d 84.

The statement of reasons given here is so general that it could be used in any case where the defendant had a criminal record and the presentence report included the statement of a victim.[6] This level of generality fails to demonstrate the thorough and thoughtful analysis required when a judge tailors the punishment to fit the crime.[7]

■■■ We perceive in the record no indication of the required judicial evaluative process. Rather, it appears the trial judge adopted virtually verbatim the sentencing recommendations made in the presentence report by a probation officer. Although nothing bars imposing a sentence exactly as recommended, the responsibility for sentencing falls on the trial court, and the statement of reasons for imposing an enhanced sentence required by I.C. 35–38–1–3 must be supplied by the sentencing judge, not the probation department. After all, Indiana trial judges, as lawyers, are closer than probation officers to the inviolable principle that our penal code rejects vindictiveness in sentencing. Ind. Const. Art. 1, § 18.

■■■ A trial judge who chooses to deviate from a presumptive sentence owes a duty to the legislature, the appellate court, the public, and the defendant to explain such a decision. Thoughtful sentencing statements should be made not only because I.C. 35–38–1–3 requires them, but also because they are a desirable feature of our criminal justice system: they facilitate appellate review of the trial court's exercise of discretion in sentencing, they promote to the public a sense that our courts dispense even-handed justice, and they

forestall acrimonious complaints by defendants of arbitrary sentencing. In addition, thorough statements may contribute to judicial economy by reducing the number of criminal appeals on the issue. It seems reasonably less time consuming for the trial judge to make a proper statement at the time of sentencing than for the appellate court to issue an opinion evaluating the adequacy of the challenged statement. Moreover, trial judges can avoid the burden of remand for a more detailed statement by making such a statement in the first place.

## PRESENTENCE REPORT

■■■ A presentence report was prepared in this case, as required by I.C. 35–38–1–8. A defendant is entitled to a copy of a presentence report, or a statement of its factual contents, "sufficiently in advance of sentencing so that the defendant will be afforded a fair opportunity to controvert the material included." I.C. 35–38–1–12(b). May argues he was denied a fair opportunity to review his presentence report because he did not receive the report until just before his sentencing hearing, and that this requires reversal of his convictions. Assuming for the sake of argument that May was denied his fair opportunity to review the report, we observe that the remedy is a remand to the trial court for a new sentencing hearing, not reversal. *Stanley v. State* (1980), 273 Ind. 13, 401 N.E.2d 689.

I.C. 35–38–1–12 requires only a "fair opportunity," without specifying any time frame. Thus, each case must be judged on its own circumstances. *Lang v. State* (1984), Ind., 461 N.E.2d 1110. The circumstances of a case always include a defendant's right to be sentenced on the basis of accurate information, because a " 'sentence based on materially untrue assumptions violates due process.' " *Id.* at 1114 (quoting

---

6. The statements of victims are routinely included in presentence investigations, and must be included if submitted in writing. *See* I.C. 35–38–1–9.

7. In the absence of an adequate sentencing statement, we decline to decide whether the sentence imposed was "manifestly unreasonable," as defined in Ind.Appellate Rule 17(B). The trial judge on remand may wish to consider

*Beatty v. State* (1991), Ind., 567 N.E.2d 1134, another case of hostage-taking in which the supreme court held a sentence of 150 years not manifestly unreasonable, but nevertheless reduced the sentence to 90 years, opining that such reduction "may provide an incentive that might discourage future hostage-takers from injuring innocent people." *Id.* at 1138.

*Gardner v. State* (1979), 270 Ind. 627, 638, 388 N.E.2d 513, 520).

■ In this case, the presentence report was filed with the trial court on July 19, 1990. The sentencing hearing was held four days later. However, the critical question is when the defendant received the report, and on that point the record is unenlightening. It appears May received the report only shortly before the hearing, and in his brief he contends that it was ten minutes. The State argues this gap in the record makes the issue unreviewable, and that May waived this issue by neither stating he needed more time nor requesting a continuance.

Uncertainty as to the length of time does not render the issue unreviewable, because there is no prescribed minimum time for review. Rather, the issue turns on whether the defendant was able to controvert the report, regardless of how much time was allowed. *See Coppock v. State* (1985), Ind., 480 N.E.2d 941. In the circumstances here, the trial judge asked May whether he wished to supplement or correct the report—May replied yes, and then made a statement over six transcript pages in length, in which he disputed the report's characterization of the facts of his crimes. In addition, May's attorney stated his views on an appropriate sentence and offered one correction, which was duly noted by the trial judge.

■ May's appellate brief fails to dispute specifically even a single facet of the presentence report, but rather argues broadly he "could have controverted numerous statements or findings that may have influenced the trial judge in a negative manner." Appellant's Brief at 11. Such a sheerly speculative argument provides no reason for us to order a new sentencing hearing. *See Lang, supra.* However, at the sentencing hearing May did question the accuracy of the details of his prior felony record, specifically, a 1970 California charge of attempted murder. Because of the generality of the trial court's I.C. 35–38–1–3 statement, we cannot discern the degree to which that charge figured into the trial judge's sentencing

calculus. On remand, if the trial court elects to include that charge in its calculations, then May should be accorded an opportunity to submit written controversion thereof. In all other respects, we hold that May received a fair opportunity to challenge the presentence report.

The convictions are affirmed. We remand for entry of detailed, specific findings supporting the trial judge's decision to impose enhanced and consecutive sentences, or in the alternative, for entry of presumptive sentences and, if any such presumptive sentences are ordered to consecutive service, an explanation why.

SHARPNACK and STATON, JJ., concur.