## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 20 2015, 8:27 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Jeffrey A. Baldwin
Tyler D. Helmond
Voyles Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Emily Duncan,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

August 20, 2015

Court of Appeals Case No.
67A01-1503-PC-102

Appeal from the Putnam Circuit
Court

The Honorable Matthew L.
Headley, Judge

Trial Court Cause No. 67C01-
1401-PC-1

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Petitioner, Emily J. Duncan (Duncan), appeals the post-conviction court's denial of her petition for post-conviction relief.

We affirm.

## ISSUE

Duncan raises one issue on appeal, which we restate as follows: Whether the post-conviction court erred in denying Duncan's petition for post-conviction relief because she was denied effective assistance of trial counsel.

## FACTS AND PROCEDURAL HISTORY

On September 29, 2011, the State filed an Information, charging Duncan with two Counts of sexual misconduct with a minor, Class B felonies, Ind. Code § 35-42-4-9(a)(1) (2011). Shortly after her arrest, Duncan retained private counsel, but on March 28, 2012, Duncan's attorney filed a motion to withdraw due to Duncan's inability to pay for his services as previously agreed. On April 18, 2012, the trial court initially denied the motion to withdraw; however, on April 25, 2012, the trial court permitted the withdrawal of counsel and appointed a public defender (Trial Counsel) to represent Duncan.

Prior to trial, the State engaged in plea negotiations with Duncan through her attorney. In approximately August of 2012, Trial Counsel informed Duncan that the State had offered to reduce her charges from Class B felonies to Class C felonies in exchange for a guilty plea. Duncan declined the plea offer.

Sometime thereafter, Trial Counsel advised Duncan that the State had offered a revised plea agreement, under which she would be convicted of one Class D felony. Again, Duncan refused to plead guilty. On October 24, 2012, immediately prior to the start of the trial, the State explained that the offer to plead guilty to a Class D felony remained on the table, which Trial Counsel immediately conveyed to Duncan. After Duncan indicated that she would not plead guilty, the trial court conducted a bench trial. At the close of the evidence, the trial court found Duncan guilty of both Counts of Class B felony sexual misconduct with a minor and entered judgment of conviction thereon. On December 21, 2012, following a sentencing hearing, the trial court merged Counts I and II and sentenced Duncan to a term of eight years—with two years executed in the Indiana Department of Correction, two years served in Community Corrections, and four years suspended to probation.

[6] On January 4, 2013, Duncan initiated a direct appeal. However, on March 5, 2013, she filed a verified motion to remand and temporarily stay appellate proceedings pursuant to the *Davis-Hatton* procedure. On March 12, 2013, our court dismissed the appeal without prejudice in order for Duncan to pursue post-conviction relief before the trial court.

[7] On January 27, 2014, Duncan filed a Verified Petition for Post-Conviction Relief. Duncan argued that her conviction should be set aside, in pertinent part, because she "was denied the effective assistance of trial counsel."

(Appellant's App. p. 121).[1] More specifically, Duncan alleged that Trial Counsel "was deficient and his representation fell below an objective standard of reasonableness" because he "failed to provide effective assistance of counsel during plea negotiations by not adequately explaining the consequences of plea offers." (Appellant's App. pp. 121-22). On January 7, 2015, the post-conviction court held a hearing and issued an Order on February 25, 2015, denying Duncan's petition for post-conviction relief. The post-conviction court concluded that Trial Counsel's "representation did not fall below the objective standard of reasonableness" because he had communicated the State's plea offers to Duncan. (Appellant's App. p. 171).

[8] Duncan now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION[2]

[9] Duncan invoked the *Davis-Hatton* procedure, "which is the termination or suspension of a direct appeal already initiated, upon appellate counsel's motion for remand or stay, to allow a petition for post-conviction relief to be pursued in the trial court." *White v. State*, 25 N.E.3d 107, 121 (Ind. Ct. App. 2014), *reh'g*

---

[1] We note that the second page of Duncan's petition, which appears to enumerate additional arguments for setting aside her conviction, has been omitted from the Appendix. We further note that although Duncan cites to the trial transcript in her appellate brief, we have only been provided with the transcript from the post-conviction relief hearing.

[2] We remind the parties that, pursuant to Indiana Administrative Rule 9(G)(2)(f), "[c]omplete Social Security Numbers of living persons" are confidential and must be excluded from public access. Additionally, we note that the pre-sentence investigation (PSI) report is to be excluded from public access; however, we have included confidential information from the PSI report in this decision to the extent necessary to resolve the appeal in accordance with Indiana Administrative Rule 9(G)(7)(a)(ii)(c). *See* I.C. § 35-38-1-13; Ind. Administrative Rule 9(G)(2)(b).

*denied, trans. denied.* In this case, because Duncan's petition for post-conviction relief was denied, the direct appeal "can be reinstated." *Id.* Accordingly, "in addition to the issues raised on direct appeal, the issues litigated in the post-conviction-relief proceeding can be raised"—*i.e.*, "the direct appeal and the appeal of the denial of post-conviction relief are consolidated." *Id.* Here, Duncan solely challenges the denial of her petition for post-conviction relief.

## I. *Standard of Review*

[10] Post-conviction procedures "create a narrow remedy for subsequent collateral challenges to convictions." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 105 (Ind. 2000), *reh'g denied, cert. denied*, 534 U.S. 830 (2001). In order to prevail on a claim of post-conviction relief, Duncan bears "the burden of establishing [her] grounds for relief by a preponderance of the evidence." Ind. Post-Conviction Rule 1(5). Because Duncan is appealing a negative judgment, our court "will reverse the denial of post[-]conviction relief only if the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post[-]conviction court." *Davidson v. State*, 763 N.E.2d 441, 443 (Ind. 2002), *reh'g denied, cert. denied*, 537 U.S 1122 (2003).

[11] In this case, the post-conviction court entered findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). As such, we will reverse the post-conviction court's findings and judgment "only upon a showing of clear error—'that which leaves us with a definite and firm conviction that a mistake has been made.'" *Ben-Yisrayl*, 729 N.E.2d at 106 (quoting *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997), *reh'g denied, cert. denied*, 523 U.S.

1079 (1998)).  Although we accord no deference to the post-conviction court's conclusions of law, "the post[-]conviction court is the sole judge of the weight of the evidence and the credibility of witnesses."  *Davidson*, 763 N.E.2d at 443-44.

## II.  *Ineffective Assistance of Trial Counsel*

Duncan claims that Trial Counsel rendered ineffective assistance during the plea negotiations prior to trial.  The Sixth Amendment to the United States Constitution—applicable to the States through the Fourteenth Amendment—guarantees "the right to effective assistance of counsel" to the accused in all criminal prosecutions.  *Missouri v. Frye*, 132 S.Ct. 1399, 1404 (2012).  It is well established that this Sixth Amendment right to effective representation "extends to the plea-bargaining process."  *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012).

As a general principle, "counsel's performance is presumed effective"; therefore, Duncan "must offer strong and convincing evidence to overcome this presumption."  *Ben-Yisrayl*, 729 N.E.2d at 106.  We review claims of ineffective assistance of counsel under the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), *reh'g denied*.  First, Duncan must establish that Trial Counsel's "performance was deficient."  *White*, 25 N.E.3d at 132 (citing *Strickland*, 466 U.S. at 687).  "This requires a showing that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment."  *Id.*  Second, Duncan must demonstrate "that the deficient performance prejudiced the defense."  *Id.*

(citing *Strickland*, 466 U.S. at 687). "To establish prejudice, a defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). Duncan's failure to establish *either* of the prongs set forth in *Strickland* "will cause the claim to fail." *Id.* (quoting *State v. Greene*, 16 N.E.3d 416, 419 (Ind. 2014)).

### A. *Deficient Performance*

[14] In evaluating whether an attorney's performance fell below "an objective standard of reasonableness[,]" we look to the "prevailing professional norms." *Woods v. State*, 701 N.E.2d 1208, 1211 (Ind. 1998), *reh'g denied, cert. denied*, 528 U.S. 861 (1999). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 132 S.Ct. at 1408. Also relevant to this case, Indiana Professional Conduct Rule 1.4(b) provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[15] The parties do not dispute that Trial Counsel communicated each of the State's plea offers to Duncan, all of which Duncan declined. Duncan now alleges that Trial Counsel's performance was deficient because, following the State's first offer to plead guilty to two Class C felonies, "[t]he penalty range for a Class C felony was not communicated. And Duncan, given that she has no legal training, did not know what the penalty range for a Class C felony was." (Appellant's Br. p. 9) (internal citation omitted). In addition, subsequent to the

State's second offer that she could plead guilty to one Class D felony, Duncan posits that Trial Counsel "failed to explain the penalty range for a Class D felony. And he failed to explain so that Duncan could understand several other terms, such as the possibility that the conviction could be entered as an alternative Class A misdemeanor and would prevent her from the requirement of registering as a sex offender." (Appellant's Br. pp. 9-10) (internal citations omitted). *See* I.C. § 35-50-2-7(b) (providing that "if a person has committed a Class D felony, the court may enter judgment of conviction of a Class A misdemeanor and sentence accordingly").

[16] In *Lawrence v. State*, 464 N.E.2d 1291, 1295 (Ind. 1984), the defendant raised a claim of ineffective assistance of counsel based, in relevant part, on the fact "that his trial counsel failed to adequately explain the terms of a plea agreement" by misinforming him of the possible penalties for the charged offense and by misadvising him about the possibility that the trial court might reject the plea. Our supreme court rejected this argument, stating that "[t]he test is one of reasonableness; this does not require perfection." *Id.* Here, at the post-conviction relief hearing, Trial Counsel answered affirmatively when asked whether he explained the differences in penalty ranges for Class B, C, and D felonies and particularly testified that he "would have informed [Duncan] what the [Class] C felony [penalty] was and if she didn't ask I would tell her what the range was and . . . her response to every offer was I'm not pleading guilty to something I didn't do." (Tr. p. 22). Trial Counsel further elaborated that on the day of the trial, even though the time for a written plea agreement had

lapsed, the State explained that it was still offering the Class D felony as a "charge bargain[]." (Tr. p. 25). Having reviewed all of the evidence against Duncan, Trial Counsel testified that he advised Duncan to accept the State's offer to plead guilty to one Class D felony because he believed she would be convicted if she proceeded to trial. According to Trial Counsel:

> I mean I spent half an hour, forty five minutes in that room discussing that and the whole time [Duncan] said I'm not pleading guilty to something I did not do. At one point in time [the prosecutor] came in and talked and explained to her you know that, or we both talked about the fact that [she] didn't have to report [as a sex offender]. That there was alternative misdemeanor sentenc[ing]. She was not interested. She was not interested in pleading guilty.

(Tr. p. 23). Because the record supports the post-conviction court's determination that Trial Counsel "told [Duncan] of the oral offer. He told her of the ramifications and he went to the extraordinary step of having the elected prosecutor discuss the case right up until the trial commenced[,]" we find that Duncan's argument is primarily a request to reweigh the evidence and reassess the credibility of witnesses, neither of which are functions of this court. (Appellant's App. p. 171); *see Dew v. State*, 843 N.E.2d 556, 560 (Ind. Ct. App. 2006), *trans. denied*.

[17] We are also unpersuaded by Duncan's attempts to characterize Trial Counsel's representation as deficient based, in large part, on the fact that by the time of the post-conviction relief hearing, Trial Counsel could not recall the precise wording he utilized two-and-a-half years earlier to explain the plea offers to

Duncan. Trial Counsel testified during the post-conviction relief hearing that he "would have told everything that was in the offer[,]" and the post-conviction court specifically found that Trial Counsel "would have told [Duncan] if any offer required [her] to register in the sex registry. [Trial Counsel] also recommended . . . that she take the [Class] D felony and talked about alternative misdemeanor sentencing possibility." (Tr. p. 27; Appellant's App. p. 170). It was well within the discretion of the post-conviction court to accept Trial Counsel's testimony as credible.

[18] Duncan additionally contends that Trial Counsel was ineffective because no special measures were taken to clarify the course of plea bargaining in this case. Specifically, she asserts that

> [t]he State did not convey any of the plea offers in writing to [T]rial [C]ounsel, nor did [T]rial [C]ounsel memorialize any conversation about plea negotiations in writing to Duncan. And the specific course of the plea negotiations was not put on record, either as a status document or verbally at the pre-trial hearings or the beginning of the trial.

(Appellant's Br. p. 11) (internal citation omitted).

[19] We initially note that the State's conduct in the course of the plea negotiations has no bearing on whether Trial Counsel rendered adequate representation. Moreover, the Supreme Court has explained that

> [w]hen a plea offer has lapsed or been rejected, . . . no formal court proceedings are involved. This underscores that the plea-bargaining process is often in flux, with no clear standards or

timelines and with no judicial supervision of the discussions
between prosecution and defense. Indeed, discussions between
client and defense counsel are privileged.

\* \* \* \*

"The art of negotiation is at least as nuanced as the art of trial
advocacy and it presents questions farther removed from
immediate judicial supervision." Bargaining is, by its nature,
defined to a substantial degree by personal style. The alternative
courses and tactics in negotiation are so individual that it may be
neither prudent nor practicable to try to elaborate or define
detailed standards for the proper discharge of defense counsel's
participation in the process.

*Frye*, 132 S.Ct. at 1407-08 (quoting *Premo v. Moore,* 562 U.S. 115, 125 (2011)).
Nevertheless, the *Frye* Court added that "[t]he prosecution and the trial courts
may adopt some measures to help ensure against late, frivolous, or fabricated
claims after a later, less advantageous plea offer has been accepted or after a
trial leading to conviction with resulting harsh consequences." *Id.* at 1408-09.
For instance, the Court suggested that the State may require offers to be
memorialized in writing or for formal offers to be made part of the record. *Id.*
at 1409.

[20] Duncan does not direct our attention to any rule or regulation requiring defense
counsel to present plea offers to a defendant in writing. Instead, Indiana's
Rules of Professional Conduct require a lawyer to:

> (1) promptly inform the client of any decision or circumstance
> with respect to which the client's informed consent . . . is
> required by these Rules;
> (2) reasonably consult with the client about the means by which
> the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;
(4) promptly comply with reasonable requests for information; and
(5) consult with the client about any relevant limitation on the lawyer's conduct . . . .

Ind. Professional Conduct Rule 1.4(a). Comment 2 to this Rule specifies that when an attorney receives "a proffered plea bargain in a criminal case[,]" he or she "must promptly inform the client of its substance unless the client has previously indicated that the proposal will be acceptable or unacceptable or has authorized the lawyer to accept or to reject the offer." Prof'l Cond. R. 1.4 cmt. 2. In accordance with his professional duties, the evidence establishes that Trial Counsel promptly and reasonably consulted with Duncan to inform her of the substance of each plea offer and to explain the ramifications for pleading guilty under each scenario. Because Trial Counsel believed it was in Duncan's best interest for her to plead guilty to the State's final offer of a Class D felony, Trial Counsel went so far as to request the prosecuting attorney to meet with Duncan prior to trial in an attempt to explain the benefits of the plea. She consistently refused the plea offers and made it clear to Trial Counsel that she maintained her innocence and would not be pleading guilty. Based on this evidence, we cannot say that Trial Counsel's representation was deficient.

## B. *Prejudice*

Although we need not address the second prong of *Strickland* in light of our conclusion that Trial Counsel's performance did not fall below an objective

standard of reasonableness, we would nevertheless find that Duncan's claim fails because she has not established that her defense was prejudiced by Trial Counsel's conduct. *See Collins v. State*, 14 N.E.3d 80, 87 (Ind. Ct. App. 2014). As the Supreme Court has determined:

> To show prejudice from ineffective assistance of counsel where a plea offer has . . . been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Frye*, 132 S.Ct. at 1409.

[22] During the post-conviction relief hearing, Duncan testified that she would have accepted the State's last plea offer had she known the possible sentencing range and been informed that judgment could have been entered as a Class A misdemeanor. The record, however, reveals that on numerous occasions, Duncan clearly "professed [her] innocence and had no intention of pleading guilty." *See Jervis v. State*, 28 N.E.3d 361, 367 (Ind. Ct. App. 2015), *trans. denied*. Along with informing Trial Counsel that she would "not plead[] guilty to something [she] didn't do[,]" Duncan stated during her pre-sentence investigation interview, "I have no version [of events] because it never

happened." (Tr. p. 22; Appellant's Conf. App. p. 28). Also, Duncan's former fiancé wrote a letter to the trial court on Duncan's behalf, asking for lenient sentencing. He described "witness[ing] her steadfast denial of guilt even in the face of increasingly attractive plea offers." (Appellant's App. p. 88). Thus, it is evident that Duncan chose to maintain her innocence and proceed to trial despite the opportunity for a favorable plea bargain. Therefore, Duncan has failed to demonstrate any prejudice.

## CONCLUSION

Based on the foregoing, we conclude that the post-conviction court properly denied Duncan's petition for post-conviction relief because she did not receive ineffective assistance of trial counsel during the plea negotiations.

Affirmed.

Friedlander, J. and Brown, J. concur