Raymond B. ELY, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A03–9410–CR–369.

Court of Appeals of Indiana.

Sept. 22, 1995.

John Pinnow, Greenwood, for appellant.

Pamela Carter, Attorney General, Julie Zandstra Frazee, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

HOFFMAN, Judge.

Appellant-defendant Raymond B. Ely, Jr. appeals from his conviction for confinement, a Class B felony, and battery, a Class C felony. The facts relevant to appeal are summarized below.

On January 25, 1993, Ely went to the office of his apartment complex, Woodwind Apartments, located in Elkhart, Indiana. T.N., the manager, was working in the office. He asked T.N. for a pass to the gym located on the grounds of the apartment complex. She responded that passes were no longer being disbursed but that if he had a photocopy of his lease, he would be admitted to the gym without a problem. When he stated that he did not have a copy, T.N. offered to make one for him. When she went into the back room of the office to retrieve the lease, Ely followed her. T.N. bent down to retrieve the papers from the filing cabinet. When she stood up, Ely grabbed her, placed her in a headlock, pointed a knife at her chest area, and told her in a low voice to "be quiet." T.N. began screaming, grabbed the blade of the knife, and a struggle ensued. T.N. eventually broke free and Ely fled. Later, Ely was arrested at his apartment.

Based on the above, on January 28, 1993, the State charged Ely as follows:

### "[COUNT] I.

[O]n or about the 25th day of January, 1993, at the County of Elkhart and State of Indiana, one RAYMOND B. ELY, JR., did then and there unlawfully, knowingly, and feloniously confine another person, to-wit: one [T.N.], Manager of the Woodwind Condominiums, 111 Clarinet Boulevard, Elkhart, Elkhart County, Indiana, without her consent, said acts being committed by the said RAYMOND B. ELY, JR., while armed with a deadly weapon, to-wit: a knife; all of which is contrary to the form of I.C. 35–42–3–3; contrary to the form of the statute in such cases made and provided; and, against the peace and dignity of the State of Indiana.

### [COUNT] II.

[O]n or about the 25th day of January, 1993, at the County of Elkhart and State of Indiana, one RAYMOND B. ELY, JR., did then and there attempt to commit the crime of Rape by knowingly, unlawfully, and feloniously engaging in sexual intercourse with a member of the opposite sex by the use of force, in that the said RAY-

MOND B. ELY, JR., did go to the office of [T.N.], Manager of Woodwind Condominiums, 111 Clarinet Boulevard, Elkhart, Elkhart County, Indiana, and did threaten the said [T.N.] and did physically restrain the said [T.N.], and the said RAYMOND B. ELY, JR., did have in his possession a quantity of duct tape for use in restraining and tying up the said [T.N.], and the said RAYMOND B. ELY, JR. did then and there commit said acts with the avowed purpose of forcibly engaging in sexual intercourse with the said [T.N.] against her will; all of which said conduct constitutes a substantial step toward the commission of the crime of Rape; all of which is contrary to the form of I.C. 35–41–5–1 and I.C. 35–42–4–1; contrary to the form of the statute in such cases made and provided; and, against the peace and dignity of the State of Indiana."

Ely received a jury trial and was found guilty of confinement, a Class B felony, and battery with a deadly weapon, a Class C felony, as a lesser-included offense of attempted rape. The trial court sentenced Ely to ten years' imprisonment for the confinement offense and four years' imprisonment for the battery offense, with the sentences to be served concurrently. Ely appeals his convictions.

On appeal, Ely raises several issues, which we consolidate into two:

(1) whether Ely's conviction for both confinement and battery as a lesser-included offense of attempted rape subjects him to a double jeopardy violation; and

(2) whether the trial court erred in admission of evidence of his prior bad acts.

■ Ely claims his convictions for both battery and confinement violate his right to be free from double jeopardy. To determine whether this is the case, Indiana applies a two-step analysis. First, if the same act constitutes a violation of two distinct statutory provisions which do not require proof of an additional fact, double jeopardy exists. *Wethington v. State* (1990), Ind., 560 N.E.2d 496, 506 (citing *Blockburger v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (same elements test)). If double jeopar-

dy is not apparent from the application of the statutory provisions, the informations and evidence are then reviewed to determine whether the offenses charged are based on the same continuous conduct or a single act. *Derado v. State* (1993), Ind., 622 N.E.2d 181, 183. When two crimes necessarily rely on the same conduct, same harm to the victim, and over the same short span of time, double jeopardy exists and one conviction must fail. *Stwalley v. State* (1989), Ind., 534 N.E.2d 229, 231.

■ Here, Ely concedes both the offense of confinement and the offense of battery each contain elements the other does not, and, thus, double jeopardy through application of the statutory provisions does not, standing alone, exist from the facts of this case. Nevertheless, he complains his right to be free from double jeopardy has been violated because the charging informations supported by the evidence adduced at trial rely on the same facts to support both the convictions for confinement and battery.

■ In its information, the State alleged the confinement occurred when Ely placed a knife to T.N.'s chest. The information for attempted rape alleged T.N. was restrained and that Ely had in his possession duct tape to tie her up and restrain her in order to commit the offense. At trial, however, T.N. supplied the testimony most favorable to the convictions. T.N. stated, in sum, that at the filing cabinet she bent over, came up, and then "was grabbed and . . . was in a headlock with a knife pointed at [her] . . . chest area." These inclusive facts were used to support Ely's conviction for confinement, as a Class B felony. *See* IND.CODE § 35–42–3–3(a) (1992 Supp.) (confinement with deadly weapon). The same conduct, and more specifically Ely's use of a deadly weapon or knife, was also necessarily relied upon and used to convict Ely for battery, as a Class C felony. *See* IND.CODE § 35–42–2–2(b) (1988 Ed.) (battery by means of a deadly weapon). The evidence discloses that no other confinement with a deadly weapon existed above and beyond that which was necessary to effectuate the battery with a deadly weapon. Therefore, Ely's convictions for confinement, a

Class B felony, and battery, as a Class C felony, violate double jeopardy. *See Griffin v. State* (1991), Ind.App., 583 N.E.2d 191, 193 (violation of double jeopardy for conviction of attempted rape and confinement where only evidence of extraneous interference with victim's liberty was that necessary to effectuate rape); *Wethington,* 560 N.E.2d at 508 (double jeopardy existing where acts constituting confinement were same to support force element of robbery conviction); *cf. May v. State* (1991), Ind.App., 578 N.E.2d 716, 721 (no double jeopardy violation where defendant convicted of battery for striking victim in face and head with gun and confinement for forcing victim at gunpoint to drive to different location).

■■■ Ely next contends the trial court erred in admitting portions of a prior written statement signed by him, which he claims impugns his character on both the confinement and attempted rape charges. The statement reads, in pertinent part,

"Rezutko asked me how I selected [T.N.] to rape. I told him that I had been drinking for several days. I didn't want to drive. I know if I would have I would have raped someone else. She is a school teacher in Wakarusa. I harrassed [sic] her for a while.... She was my eighth grade English teacher. I remember an incident in her class where something happened and she disciplined me and I she [sic] made me sit on the classroom floor for a week. I never got over the ribbing I took because of that. I have never forgot that. I haven't called her in a long time until just recently when I called her twice.

Rezutko asked me if if [sic] I have ever raped or attempted to rape anyone before and I told him no. He asked me if I ever stalked anyone and I told him no other than Mary. I drove past her house just see [sic] what her house looked like. I have a lot of strange feeling [sic] inside me. I had no reason to attack [T.N.]. She's always been helpful whenever I need anything done in my apartment or if I was late with my rent. I can't figure out why her except that she was the closest one I knew.

(Emphasis added.) Ind.Evidence Rule 404(b) provides that "evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evid.R. 404(b). However, evidence of extrinsic crimes or prior bad acts is admissible to prove intent. *Wickizer v. State* (1993), Ind., 626 N.E.2d 795, 796–797. Further, as the *Wickizer* court stated,

"The intent exception in Evid.R. 404(b) will be available when a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent. When a defendant alleges in trial a particular contrary intent, whether in opening statement, by cross-examination of the State's witnesses, or by presentation of his own case-in-chief, the State may respond by offering evidence of prior crimes, wrongs, or acts to the extent genuinely to prove the defendant's intent at the time of the charged offense. The trial court must then determine whether to admit or exclude such evidence depending upon whether 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.'"

*Id.* at 799. In the present case, the trial court found that Ely placed his intent into issue during his opening statement. Specifically, Ely stated in his opening remarks that although his intent to go to the office where T.N. was working might have been that he thought about killing himself, or that he thought about scaring T.N. so the police would be forced to shoot him, he "did not think of rape."

On appeal, Ely argues that because he specifically *denied* the intent to commit the charged offenses, and more precisely the crime of rape, his intent was not raised as an issue. This logic is flawed. It is Ely's specific denial of his intent to rape, along with his offerance of the specific contrary purposes, that created a particularly contrary intent as is contemplated by Evid.R. 404(b). *Wickizer,* 626 N.E.2d at 799; *see Day v. State* (1994), Ind.App., 643 N.E.2d 1, 4 (evi-

dence of defendant's prior acts in molestation case admissible to show intent where defendant claimed his touching of victims was with innocent motive during game of tag); *Butcher v. State* (1994), Ind.App., 627 N.E.2d 855, 859 (defendant on trial for molestation put intent into issue during pretrial statements to police, opening remarks, and own testimony by stating he could not resist daughter's advances or in the alternative she forced him to touch her). Inasmuch as Ely offered a sufficiently particular contrary intent, the statement was admissible pursuant to Evid.R. 404(b).

Moreover, the evidence was more probative than it was prejudicial to Ely. *Wickizer* at 799; *see* Ind.Evidence Rule 403. The statement was Ely's own signed written statement voluntarily executed during questioning by police. It disclosed in detail the recent events leading up to his contact with T.N., including his actions and thoughts shortly before deciding to attack her, and the reasons for choosing her in particular as his victim instead of someone else. The trial court did not err in admission of this evidence.

Moreover, T.N.'s testimony at trial unequivocally disclosed that Ely restrained her by grabbing her and placing a knife to her chest. Thus, even had error occurred in the admission of this evidence, any error would have been harmless as there is substantial independent evidence of Ely's guilt to sustain his conviction for confinement, as a Class B felony, as charged in Count I of the information.

There being a violation of double jeopardy, Ely's battery conviction must fail. However, there being no error in the remaining charge, his conviction for confinement is affirmed. The cause is remanded to the trial court with instructions to enter judgment consistent with this opinion.

Reversed and remanded in part; affirmed in part.

STATON and SULLIVAN, JJ., concur.